[PHILADELPHIA, APRIL 17, 1838.]

## TWELVES *against* WILLIAMS and Another.

### IN ERROR.

The plaintiffs, holding liens for materials furnished for the erection of cer-
tain buildings, and a sale being about to take place of the buildings,
under an execution, an agreement was entered into between the plaintiffs
and A., who had previously purchased the buildings, subject to the
liens, that the sheriff's sale should not prejudice the plaintiffs' liens, and
that A. should either bid up the property, so as to pay the liens in full,
or that he should buy the property, and pay the liens. The property
was purchased by A. who shortly afterwards made a general assign-
ment of his property for the payment of creditors, with certain prefer-
ences, including therein the plaintiffs: *Held,* that the assignees were
bound by the agreement entered into between A. and the plaintiffs; and
that the liens of the plaintiffs continued, and might be enforced against
the property, notwithstanding the sheriff's sale and the assignment.

ERROR to the District Court for the City and County of Phil-
adelphia.

The action in the Court below was a *scire facias* on a mechan-
ic's lien, brought by John Williams and William Johnson against
Stephen Twelves, with notice to William H. Winder and Alex-
ander Krumbhaar, terre-tenants, for lumber furnished to certain
houses in the City of Philadelphia, erected by Stephen Twelves.

On the trial before Judge Stroud, on the 25th of November,
1836, the plaintiffs having proved the sale and delivery of lum-
ber for the building described in the writ and claim filed, accord-
ing to their statement filed within six months, proceeded to give
in evidence the following testimony, to which exception was taken
[*486] by the defendant's *counsel, and the points were re-
served for the decision of the Court.

March 22, 1836, Agreement between W. & L. Krumbhaar
and the plaintiffs, as follows: "It is understood and agreed that
the sheriff's sale of S. Twelves's property, to take place this
evening, is at our instance, for the purpose of title, we having

(Twelves *v.* Williams.)

purchased the same of Twelves, subject to the liens, and in respect to them stand in his place.    And we will either bid up the property so as to pay in full the liens of Williams & Johnson and Robert Evans, or buy the property ourselves and pay their liens, which such sale shall in no respect prejudice or affect, until paid off."

(Signed)

W. & L. KRUMBHAAR.

Certain articles of agreement between Richard Twelves, assignee of Stephen Twelves, and W. F. & L. Krumbhaar, signed by the parties, for the sale of the property in question, subject to the liens of the mechanics and material-men, dated December 23, 1835, of which the following is a copy, were produced in evidence.

"House and lot on Mulberry street, 22 feet east of Schuylkill Sixth street, unfinished : due Ellmaker on

|  | | |
|---|---|---|
| mortgage, | | $600 |
| due Hahn for bricks, | | 600 |
| | Say | $1200 |

Also subject to a ground-rent of $143 per annum, but clear of all other incumbrances.

Three houses and lots on the east side of Schuylkill Sixth street, between High and Mulberry streets, *all finished*, except some coal-grates, paper-hanging and hydrants.    Mortgages to Ellmaker amounting to    \ $5000

|  | |
|---|---|
| Liens and Judgments, | 2000 |
| | $7000 |

Each subject to a ground-rent of $63 per annum, but clear of all other incumbrances.

*Memorandum.*  Richard Twelves sells the abovementioned property to W. F. & L. Krumbhaar, in fee, deed to be perfected within three days from this date.    Title to be perfected by a sheriff's sale, at the expense of R. Twelves.

W. F. & L. Krumbhaar are to convey to R. Twelves, in fee, a drug-mill and lot of ground on Front street, subject to a ground rent of $105 per annum, and also subject to a mortgage of $1000 payable to Robert Wallace, with interest, but clear of all other incumbrances, except a mortgage of $5000, payable to said W. & L. Krumbhaar in one year, with interest, in the usual way, which last *mentioned mortgage is not to be paid [*487] to them, if within one year from this date a clear indefeasible estate in fee-simple to the four houses and lots herein-

(Twelves *v.* Williams.)

before first described, be conveyed to W. & L. Krumbhaar; but if such estate be not so conveyed to them within the said year, the said $5000 mortgage is to be paid to them within the year in money, or else the mortgaged premises reconveyed to them, clear of all incumbrances, except the said ground rent and mortgage to Robert Wallace."

A witness testified that he had a conversation in the store of the Messrs. Krumbhaar, shortly after the agreement between them and Twelves. One of them told him that they had taken the property subject to all the liens. That they would pay them shortly. That they were to step in Twelve's shoes. Nothing was then said about a sheriff's sale.

The general assignment of W. & L. Krumbhaar, to William H. Winder and Alexander Krumbhaar, for the benefit of their creditors, dated the 23d day of April, 1836, was then given in evidence by the plaintiffs, which contained, first, a preference to one of the assignees, Winder, for the whole amount of his debt, and, amongst others, the following preference :—

"Seventhly. After paying and satisfying the aforesaid sums in full, then to pay and satisfy to each person, who was a creditor by mechanic's or material-man's lien, on the houses situate as follows, [describing them,] formerly the property of Stephen Twelves, the amount in full of his or their respective liens, at the date of the sale of the said houses, by the sheriff of the city and county of Philadelphia, to the said Lewis Krumbhaar, Junior, and William F. Krumbhaar."

Also the general assignment of Stephen Twelves to Robert Twelves, dated December 16, 1834, and recorded within thirty days.

The defendants then, to show that the premises were discharged from the plaintiff's lien, gave in evidence—a judgment in the District Court to December Term, 1835, No. 735, at the suit of Hinckle *v.* Stephen Twelves; writs of *fi. fa.*, and *venditioni exponas* thereupon; and the sheriff's deed of the premises in question, March 30, 1836, to W. & L. Krumbhaar; the sale having taken place on the 22d March, 1836.

A verdict was rendered for the plaintiffs for $409 81, subject to the opinion of the Court on the reserved points.

The Court below were of opinion, that under the circumstances [*488] *of the case, the premises were not discharged from the lien of the plaintiff's claim; whereupon the defendants brought this writ of error, and specified for error.

"That the Court erred in giving judgment for the plaintiff,

1. Because the effect of the sheriff's sale was to discharge the premises from the lien of the plaintiff's claim.

2. Because, if it did not, the defendants, the assignees of W.

(Twelves *v.* Williams.)

& L. Krumbhaar, were purchasers for a valuable consideration, without notice of any equity between the plaintiffs and the Krumbhaars, and therefore took the premises discharged therefrom."

Mr. *M‘Call*, for the plaintiffs in error, said, that this was an attempt by a particular creditor to set up a secret trust against a regularly recorded conveyance to the general creditors. The trust is secret, unrecorded, and one which no vigilance of the creditors could have led to or discovered. He submitted that this attempt ought not to succeed,—*first*, on grounds of public policy; that these secret trusts may not to be encouraged against third persons: *secondly*, because the equity of the general creditors is greater than that of the particular creditor: and, *thirdly*, because if their equity be not greater than, it is at least equal to, that of the particular creditor; and having the legal estate, the Court will not take the plank away from them; in other words, they are *bona fide* purchasers, without notice, and come within the rule which protects such purchasers.—The Court expressing a desire that he should speak to the last point, he contended that the equities being equal the law must prevail: that the equity of both parties was that of creditors; that the equity of a mechanic was not greater that that of any other creditor, although the legislature had fortified it by giving a specific lien which was the result, not of any peculiar equity, but of positive law. In the present case, the effect of the sheriff's sale was to discharge the land from the lien.

Upon this superior advantage of the legal estate when the equities are equal, is founded the rule as to purchasers without notice. Assignees for the benefit of creditors or rather the creditors themselves are such purchasers, and are entitled to the *tabula in naufragio*. In considering this question we must throw out of view all assignments, by *operation of law;* such as in bankruptcy and insolvency, in which it must be admitted that the rights of the bankrupt or insolvent are passed in the same plight and condition as he possessed them; because it is the law that casts it on the assignee. But there is a wide difference between an actual assignment by *contract,* for a valuable consideration; and one by mere operation of law, as was stated by Lord Thurlow, in *Worrall* v. *Marlow*, in a note by Mr. Cox to *Bosvill* v. *Brander*, (1 P. Wms. *459). Here the contract is a conveyance to creditors, for a valuable consideration, viz. [*489] their debts.

If it be objected that no money is actually paid at the time by the assignee, the answer is, that it is no where laid down, that the rule as to purchasers without notice, requires that it should

(Twelves *v.* Williams.)

be paid at the time.   All that it requires, is, that the consideration should be paid, and not merely secured to be paid.   In the case of an assignment to creditors, the consideration is actually paid, the money advanced, or the goods delivered.   An antecedent debt, is a valuable consideration, within the doctrine of purchasers.   It appears to have been so considered by the eminent counsel who argued the case of *Mackreth* v. *Symmons*, (15 Ves. 331).   Sir Samuel Romilly, says, " certainly a former debt is sufficient to sustain a purchase, as for a valuable consideration." *Roberts* v. *Salisbury*, (3 Gill & Johns. 426) ; was a case of a conveyance as an indemnity for responsibilities.

But the question is decided in favour of the assignees, by the highest judicial authority in this country.   In New York, it was decided by Chancellor Kent, in *Dey* v. *Dunham*, (2 Johns. Ch. R. 182) ; that assignees for creditors, are purchasers within the rule : and although this was reversed in 15 Johns. R. 557 ; yet the reversal was only upon another point, and left the decision upon the question at bar unimpaired.   But there is still higher authority for the position,—the decision of the Supreme Court of the United States, made after great deliberation and a most learned and able consideration of the subject, in *Bayley* v. *Greenleaf*, (7 Wheaton, 46) : in which it was held that the lien of a vendor for purchase-money, was defeated by an assignment to trustees for creditors.   Chief Justice Marshall, in delivering the opinion of the Court, reviews the English authorities, and places the decision on the solid basis of the policy of the United States, in protecting creditors against secret and unrecorded trusts.   This case has been adopted and carried out by the Supreme Court of Tennessee in *Gunn* v. *Chester*, (5 Yeager, 205) ; where the vendor's lien was held not good against creditors of the vendee, for whose benefit the land was mortgaged.   And Chancellor Kent, in the last edition of his Commentaries, vol. 4, page 153, refers to the decision in *Bayley* v. *Greenleaf*, as made " after a full examination of the question, and upon grounds that will probably command general assent."

Certainly the policy of protecting creditors is quite as strong in Pennsylvania as in any other state.   The case of *Friedley* v. *Hamilton*, (17 Serg. & Rawle, 70) ; affords a strong illustration of this.   An absolute deed and defeasance made at the same time, were held to constitute a mortgage ; and the defeasance not being recorded, it was considered as an unrecorded mortgage and postponed to a judgment creditor of subsequent date, notwithstanding the absolute deed had been duly recorded.

It is true that it has been held that a judgment-creditor is not a *purchaser within the recording act of 1775.   But [*490] this, to adopt the language of the present Chief Justice,

in the case just referred to, is, "because he cannot be prejudiced by ignorance of an absolute conveyance, which leaves nothing in the debtor to answer his demand, and it is therefore, not necessary to his protection that he should have notice of it." This reason does not, however, exist, in the instance of a mere lien which only binds the debtor's interest, and leaves it subject to the claim of other creditors. The recording act of 1715, strongly shows the protective policy of our state, in favour of creditors; and the cases of *Kauffelt* v. *Bower,* (7 Serg. & Rawle, 64); *Semple* v. *Burd,* (7 Serg. & Rawle, 286); and the late case of *Megargel* v. *Saul,* (ante, p. 19); may also be referred to, to show the policy in Pennsylvania, to be the same as that on which *Bayley* v. *Greenleaf,* is founded. In the first of these cases, a vendor who had made an absolute conveyance with a receipt for the purchase-money, was held to have no lein against judgment-creditors of the vendee, even with notice, unless the claim was evidenced by a mortgage or other writing on record. In the second, a mortgage not duly recorded was held not a lien against a subsequent judgment-creditor. In the present case, the creditors derive their title through a *recorded* conveyance; the material men derive theirs under a *secret* and *unrecorded* instrument: the creditors have the vantage ground of the legal estate: the Court will not take away the shield with which the law has covered them.

But is the equity of the material men in the present case, equal to that of the general creditors ? We think not: because by their deliberate act, they held out the Krumbhaars to the world as the absolute and unqualified owners of this property, free from the lien of their claims. They gave them a false credit; and their conscience is affected by their act. They were bound to have disclosed on the record their incumbrance, and their not doing so was such *crassa negligentia,* as amounts to constructive fraud, and ought to postpone them to the general creditors. The effect of this secret agreement was to give the Krumbhaars credit to the unincumbered value of this property, and to induce their creditors to trust to trust them on the faith of it. It was not an unadvised agreement on the part of the lien creditors. Twelves being insolvent, they were compelled to sue out their liens. To avoid this, they took the personal responsibility of the Krumbhaars, at that time in apparently flourishing circumstances, and are, therefore, not entitled to any peculiar favour.

The security of titles requires, that these secret and underhand agreements, should be stifled with inexorable rigor. The decision in *The Corporation* v. *Wallace,* (3 Rawle, 109,) has produced certainty. The community understand that a sheriff's sale discharges the land from all liens, except that of the first mortgage. No private agreement should be permitted to counter-

(Twelves *v.* Williams.)

[*491] vail this stern rule of law. And *indeed, this Court in *Shultz* v. *Diehl*, (2 Penn. Rep. 273,) seem to have declared for the future, that the legal effect of a sheriff's sale should not be altered by any agreement of the parties which was not a part of the *record* of the sale.

Mr. *Price* for the defendants in error.

1. As between the original parties, the lien continued. *Modus et conventio vincunt legem.* (2 Co. 73.) A sheriff's sale may be clear or subject to liens, as agreed by the parties in interest. *Muse* v. *Letterman*, (13 Serg. & Rawle, 167, 170, 171); *Stackpole* v. *Glassford*, (16 Serg. & Rawle, 163). The case in 2d Rawle, 166, only decides that loose talk shall not make the sale subject to a mortgage. It would be a fraud on the creditors if the Messrs. Krumbhaars could clear the property of the liens, contrary to their agreement; and to avoid such a consequence, this Court have imposed the lien or a trust on the purchaser. *Gilbert* v. *Hoffman*, (2 Watts, 66); *Brown* v. *Dysinger*, (1 Rawle, 408, 413, 414); *Kisler* v. *Kisler*, (2 Watts, 325); 8 Serg. & Rawle, 492; 2 Serg. & Rawle, 461.

2. The assignees are in no better condition than the assignors. They pay no purchase-money on the transfer, and take what the debtor had, as he held it, subject to all assets and contervailing equities. The doctrine in England in bankruptcy cases, is unquestionable and not denied. 3 Sugd. on Vendors, 81; 12 Ves. Jun. 349; *Mitford* v. *Mitford*, (9 Ves. Jun. 99); 2 Ves. & Beam. 309; Powell on Mortgages, 542; *Taylor* v. *Wheeler*, (2 Vernon, 564); *Finch* v. *Winchelsea*, (1 P. Wms. 280); Cowp. 565; Doug. 636. The American cases, with a single exception, accord with the English decisions, and establish the principle, that it is only the purchaser who has paid a valuable consideration on the transfer, without notice, in the ordinary course of business, that is protected, and put in any better situation than the assignor. 1 Dallas, 430; 4 Binn. 368; 3 Rawle, 99, 203; 4 Rawle, 345, 354; *Wolf* v. *Eichelburger*, (2 Penn. Rep. 346); 1 Whart. 433; 10 Johns. Rep. 540; 13 Wendell, 570; 16 Wendell, 574; 15 Mass. 156. It would be plainly unjust that the Krumbhaars should pay their general creditors, who did not trust specifically to this property for payment, at the expense of those who did so trust to it, and whose claims constituted the price or purchase-money that was to be paid for it, without a forfeiture of those claims by laches.

3. The assignees also had notice by the assignment of these liens. *Lodge* v. *Simonton.* (2 Penn. Rep. 449); *Petrie* v. *Clark*, (11 Serg. & Rawle, 377); *M'Carty* v. *Springer*, (3 Penn. Rep. 157); *Coddington* v. *Bay*, (20 Johns. Rep. 637); *Bay* v. *Coddington*, (5 Johns. Ch. Rep. 58).

(Twelves v. Williams.)

Mr. *Randall* for the plaintiff, in conclusion, enforced the arguments of Mr. *Price*, his colleague, and cited additional authorities, \*viz. :—*De la Chaumette* v. *The Bank of England*, (9 Barn. & Cress. 208; s. c. 17 Eng. Com. Law Rep. 356); *Mackinley* v. *M'Gregor*, (ante, p. 369). [*492]

Mr. *Ingraham* in reply.

The opinion of the Court was delivered by

GIBSON, C. J.—Were it not for the agreement to the contrary, the plaintiff's lien would certainly have been discharged by the sheriff's sale. The Messieurs Krumbhaar, however, had power to sell, subject to it; and they actually sold in performance of an agreement to buy the property themselves, or bid it to a price that would ensure satisfaction of this and another incumbrance from the proceeds, with a proviso that they should continue to bind till they were paid. They bought it in; and, by force of the agreement, the lien was an incumbrance on it while it remained in their hands.\* They have made a general assignment with the usual preferences; and the single question is, whether the assignees in trust for the creditors, hold discharged of the lien, as purchasers without notice, and for valuable consideration. It is not doubted, that they are invested with the title, and that the lien, apparently discharged by the sale, and deriving its actual force from a private agreement, was essentially a secret one; but it is contended, that the assignment gave notice of it, or disclosed what would, by inquiry, have led to it. It indeed contains a provision for mechanics' liens by name; but such provision by the owner of a title, acquired through a judicial sale, points rather to personal than to real security, and intimates not the conditions on which it was given. The object being avowedly to procure a title, pursuant to a previous purchase, may have induced the vendee to assume the liens as personal liabilities, in consideration that the creditors would not interfere with the sale; and this shows, that to provide for them as personal charges, even by the name of liens, is not necessarily or naturally inconsistent with a previous extinction of them as such. The vendee's responsibility might well be supposed to have been accepted as a substitute for them; and whatever is sufficient to direct an inquiry, must point distinctly to the object of it. It seems, therefore, that there is not enough in the case to affect the creditors with actual or constructive notice; but are they the purchasers for valuable consideration?

\* See 8 Watts, 50; 3 Watts & Sergeant, 260; 6 Id. 284; 9 Id. 104; 5 Barr, 244; 8 Id. 297; 2 Harris, 13; 10 Id. 317; 11 Casey, 182; 4 Wright, 176; 6 P. F. Smith, 52.

(Twelves *v.* Williams.)

It is conceded, that they have not released; and that the interests of the parties remain as they were at the date of the assignment. The assignees, being instruments selected by the debtor, and having no beneficial interest as such, stand in no personal or distinctive equity; for though a pecuniary consideration is always inserted in the deed, where they are not creditors, (the necessity of which, to protect the transaction from the statutes of Elizabeth,) [*493] is shown in *Roberts on Fraudulent Conveyances, 429, and recognised in *Howry* v. *Miller*, (3 Penn. Rep. 381,) it is merely nominal, and not that substantial sort of equivalent which gives a claim to something in return. Then equity, if any, must be the equity of the creditors represented by them; and what substantive or formal advantage have these surrendered in compensation of the benefits expected from the assignment? None are pretended. Neither are they placed in the category of purchasers by their character or position. That they are not protected as such by the recording acts, was declared in *Heister* v. *Fortner*, (2 Binn. 40;) and though it was said in *Petrie* v. *Clark*, (11 Serg. & Rawle, 377,) that the extinguishment of a debt is a valuable consideration for a thing taken in satisfaction of it, the acceptance of it as a security without a stipulation for forbearance, was held to be otherwise. So also in *Ramsay's Appeal*, (2 Watts, 232,) creditors were held to stand exactly in the equity of their debtor. I know of no case in which the abstract existence of debts was held to be a valuable consideration for a transfer of property to trustees for distributive payment, except *Bayley* v. *Greenleaf*, to be presently noticed. In *Lord Paget's Case*, (1 Leon. 194,) it was held, that the mere destination of property to payment of the grantor's debts, by a general assignment to a *stranger*, is not a consideration even to raise a use on a covenant to stand seised, and consequently, not to pass even the legal title; and there is therefore nothing to sustain it, under the statutes of Elizabeth, against a creditor or a purchaser, though it is good against an heir. *Leech* v. *Leech*, (Ch. Ca. 249). But where the creditors are party to the deed, there is a clear valuable consideration in the forbearance of suit and mutual accommodation expressed by the terms, or implied by the nature of the transaction. Roberts on Fraud, Con. 431. In the case before us, the creditors, not having become parties to the transaction, by performance of the condition, which alone could make them so, were bound in the meantime to no forbearance or accommodation whatever. In *Bayley* v. *Greenleaf*, however, an equitable lien of admitted obligation betwixt the vendor and vendee, was not enforced against assignees in trust for the vendee's creditors. In Pennsylvania, such a lien is rejected altogether; but admitting the general existence of it, in that case the question was, whether

(Twelves v. Williams.) ·

the creditors were exempt from it as purchasers. For aught that appears, they had relinquished nothing in compensation of the benefits of the trust; nor had they elected to look to it for satisfaction; and though the assignment could not prejudice them, it was held to divest the vendor's lien for purchase-money. The reasoning of the Chief Justice, in delivering the opinion of the Court, is unsatisfactory on principle and authority. . Analogous decisions· on assignments in bankruptcy and statutory insolvency, were admitted to be adverse to his conclusion; yet though no essential difference betwixt one of these and an assignment by act *of the party was pointed out, a distinction was taken on [*494] the ground that, by the latter, creditors are purchasers for a specific consideration. What advantage or thing they are supposed to part with in the one case, in order to make them so, which they do not part with in the other, was not attempted to be shown. The truth is, they part with nothing. Before satisfaction or release, the reclamation of a preferred creditor is unimpaired; and the exertion of the debtor's power to provide for him, is consequently gratuitous. The intended preference is a gift of his dominion, which enables him to pay in the order that pleases him; and the thing destined to payment, whilst unappropriated, continues in the hands of his agents, subject to the equities which adhered to it in his own. The appointment of a trustee is in fact no more than a substitution of the hand to pay. Preferred creditors are not more meritorious than the creditors of an intestate, who stand in his place; the difference in other respects being that the trustees succeed to the title by·act of the party, and the administrators succeed to it by act of the law; but, in either case, without a beneficial act done ·or prejudice suffered. When the trust is executed, however, the money cannot be followed; but, as was intimated in *Heister* v. *Fortner*, the creditors must cease to be so, before they can be purchasers. Here, the trust remains unexecuted; and as the creditors will not be put in more unfavourable circumstances by the ·enforcement of the lien than if the assignment had not been made, nothing has moved from them that can prejudice them, or benefit the debtor; and they are consequently not purchasers of its benefits.

Judgment affirmed.

Cited·by Counsel, 4 Wharton, 502; 5 Id. 183; 8 Watts, 49; 2 Barr, 371; 3 Id. 76, 138; 4 Id. 437; 5 Id. 78; 10 Harris, 316; 11 Id. 227; 8 Casey. 475; 6 Wright, 393; 9 Id. 156; 14 Id. 79; 4 P. F. Smith, 201; 8 Id. 79; 10 Id. 207, 306.

Cited by the Court below, 6 Watts & Sergeant, 282; 5 Barr, 158.

Cited by the Court, 5 Wharton, 205; 3 Watts & Sergeant, 256; 6 Id. 331; 1 Barr, 104; 5 Id. 107, 138; 9 Id. 60; 1 Harris, 245; 2 Casey, 111; 8 Id. 129; 1 P. F. Smith, 211; and followed 7 Watts & Sergeant, 374.

See also, 2 Grant, 218.