### JAMES G. FAIR, Respondent, *v.* HENRY C. HOWARD et als., Appellants.

Mortgagee for Pre-existent Debt when regarded as Bona Fide Purchaser for Value. Where Howard was indebted to Fair, and executed to him a note for the debt, and a mortgage on certain real estate to secure the same: *Held*, that Fair, as to the land and mortgage, occupied the position of a *bona fide* purchaser for value; and that his right would prevail as against the equity of Armstrong, for whom Howard held half the land in trust, the declaration of which trust was, however, not put on record until after the mortgage.

Possession of Land as Notice of Trust in it—Estoppel. Where Armstrong being the owner of land, deeded it to Howard by conveyance absolute on its face, but with an understanding that Howard was to hold one-half the land in trust for him; and after recording the conveyance, Armstrong remained in possession of the land: *Held*, that he was estopped from relying on his continuance in possession as notice of the trust.

Appeal from the District Court of the First Judicial District, Storey County.

This was one of two actions commenced in 1868, against H. C. Howard, William R. Armstrong and others, to foreclose mortgages. The mortgage in this case was for the sum of ten thousand two hundred and forty-four dollars, upon the undivided half of the " Devil's

Gate Toll Road," in Storey, Lyon and Ormsby Counties; and in addition to Howard and Armstrong, John Sime, B. F. Hastings, Joseph M. Douglass and Charles L. Low were made defendants. The other case was that of *Charles L. Low* v. *Henry C. Howard* and *William R. Armstrong,* on a mortgage for two notes of four thousand dollars each, on the undivided half of the property in Lyon County, known as the " Devil's Gate Hotel."

The points involved in the case of *Low* v. *Howard* and *Armstrong* were substantially the same as those here involved, and it was decided expressly on the authority of this case—the Court, Whitman, J., holding that the plaintiff " by reason of granting his debtor Howard an extension of time upon his indebtedness, became a *bona fide* purchaser for value, against whom the equity of Armstrong cannot prevail."

*R. S. Mesick* and *J. Seely,* for Appellants.

*Williams & Bixler,* for Respondent.

By GARBER, J. :

This is an action for the enforcement of the rights secured by a mortgage. The complaint alleges that on the nineteenth day of April, 1867, the defendant Howard made and delivered to the plaintiff his promissory note of that date, and at the same time, to secure its payment, executed a mortgage conveying to the plaintiff certain real estate described ; that said mortgage was duly recorded ; that defendant Armstrong and others claim an interest in the premises, subsequent to the mortgage lien, etc. Howard and Armstrong answered, setting up that one half of said mortgaged premises, at the time of the execution of the mortgage, belonged to Armstrong, the title being vested in Howard in trust for Armstrong ; that plaintiff had notice of said trust, etc. A judgment was rendered, directing a sale of the premises for the payment of said note, and subordinating the claim of Armstrong to the lien of the mortgage. From this judgment and an order overruling a motion for a new trial, this appeal is taken.

The record discloses the following facts : In the year 1860, Howard acquired title to the premises ; on the twentieth of August,

1862, Howard conveyed the same to Armstrong; on the twenty-seventh of April, 1863, Armstrong, by deed absolute on its face and duly recorded, conveyed the property to Howard. At the time of the execution of this last-named deed, it was verbally agreed between Howard and Armstrong that one half of the interest so conveyed was to be absolutely the property of Howard, the other half to be held by him in trust for Armstrong, and to be conveyed to Armstrong on request. This trust vested in parol until the fourteenth day of May, 1868, when Howard, by deed in writing, declared the trust to exist, and to have existed since April, 1863. Armstrong was and remained in possession of the premises from a date prior to the deed of April, 1863, to the commencement of this action. Prior to, and at the time of, the execution of the mortgage, Howard was indebted to the plaintiff in the amount specified in the note. Howard requested time for the payment of this indebtedness; and after agreeing upon the rate of interest, the plaintiff consented to give the time and take said note and mortgage. The note was made in the State of California, and was made payable twelve months after date, bearing interest at the rate of one and one-half per cent. per month. It is not pretended that the plaintiff had any notice or knowledge of the existence of the trust set up by Armstrong, other than is to be inferred by law from the fact of Armstrong's possession. According to *Sime* v. *Howard*, 4 Nev. 473, Armstrong, as *cestui que trust*, was the equitable owner of one half of the property at the date of the mortgage.

Upon these facts the counsel for appellant contends in an able and elaborate argument, that the equity of Armstrong, as *cestui que trust*, was good as against Howard, and equally good against all persons except *bona fide* purchasers for value; that the plaintiff cannot be considered such a purchaser, because to have a defense against prior equities, one must be a purchaser in the technical sense of the common law, and must have acquired the legal title; that a mortgagee is not a purchaser at common law, and *a fortiori* not in this State where, it is contended, a mortgage does not pass the legal title; that this mortgage, even if a *quasi* conveyance, was not taken in good faith within the meaning of either the equitable or statutory rule concerning *bona fide* purchasers, to the extent

Fair *v.* Howard.

that it is given on account of an antecedent debt; that to consti-
tute a consideration, valuable in the sense of sufficient, not for the
negotiation of bills and notes but for postponing the prior equities
of a *cestui que trust* in trust property, wrongfully mortgaged by
the trustee for his own private ends, there must have been a new
and specific payment or transfer of money or money's worth; and
that the forbearance of a sum of money due and payable cannot be
considered as money, etc., so as to make the mortgage of any force
against the prior equity; and that even could it so avail, the mort-
gage would not bind the property for the debt forborne, but only
for the price of the forbearance; and that the effect of the mortgage
in barring the statutory right of attachment is, if possible, of still
less avail; that though there is a conflict of authority as to what is
sufficient consideration to impair prior equities in commercial paper,
there is none in case of property; that the early New York cases
hold most nearly, in cases of paper, to the rule in property cases,
and in the former disallow forbearance, or even payment, as
consideration; and assuming the equity rule to be that payment or
extinguishment of a preëxisting debt is not a valuable consideration,
it is argued that mere forbearance of such debt compensated for by
the payment of adequate interest cannot be so considered, without
abandonment of the whole reasoning by which the equity rule is
supported. It is conceded, and is elementary law, that a *bona fide*
purchaser for a valuable consideration, acquiring the legal title or
estate from the trustee, will hold against the beneficiary; but, de-
nying that plaintiff is such purchaser, it is claimed that (Howard
still holding the legal title) we must apply the equity doctrine, that
where the legal title is so outstanding, it is held in trust to satisfy
different equities in the order of their creation. (*Ex parte Knott,*
11 Vesey, Jr.)

It is clear that the plaintiff is a *bona fide* mortgagee, so far as
the question of notice is concerned. By putting the conveyance
to Howard on record, Armstrong is estopped from relying on his
continuance in possession as notice of the trust; and under such
circumstances the plaintiff was not bound to go beyond the declara-
tions of Howard and Armstrong as publicly recorded, and inquire
into the actual relations subsisting between them. This is the rule

laid down in the notes to *LeNeve* v. *LeNeve*, 2 Leading Cases in
Equity, 166, and any other would be unsafe and subversive of the
policy of our registry laws. (*Bloomer* v. *Henderson*, 8 Michigan, 405,
and cases cited.) Then, was there here a valuable consideration ?
The question is not whether the consideration is adequate, but
whether it is valuable ; for if it be such a consideration as will not
be deemed fraudulent, or as will make the plaintiff a purchaser
within the statute, (27 Eliz.) or is not merely nominal, or the
purchase is such a one as would hinder a *puisne* purchase from
overturning it, the consideration must be deemed valuable within
the meaning of the rule protecting *bona fide* purchasers for value
against antecedent equities. (1 Daniel's Ch. Pl. & Pr. 777 ;
*Bassett* v. *Nosworthy*, 2 Leading Cases in Equity, 51.) Nor need
the consideration be money—the giving up a right may suffice.
(*Hill* v. *The Bishop of Exeter*, 2 Taunton, 82.)

Whether a mortgagee, who takes a mortgage as security for a
preëxisting debt is such a purchaser within the statute, (27 Eliz.)
has been doubted, and seems to be left an open question by the
text writers. (Greenleaf's Cruise, Title 32, Deed, Ch. 28, Sec.
39 [note] ; 2 Leading Cases in Equity, 103, *et seq.*) The analo-
gous question, whether a promissory note indorsed over as collateral
security for a preëxisting debt, before maturity and without notice,
can be held discharged of the equities between the original parties,
has given rise in the American Courts to great conflict of judicial
decision, and has elicited opinions exhaustive of the argument. In
the early New York cases, and those which have followed them,
the reasoning is, that where the note is received for an antecedent
debt, either as nominal payment or as a security for payment, with-
out giving any new consideration, the receiver is not a holder for
value ; that the principle of protecting the *bona fide* holder of ne-
gotiable paper who has paid value for it, or who has relinquished
some available security or valuable right on the credit thereof, is
derived from the doctrines of the Courts of equity in other cases,
where a purchaser has obtained the legal title without notice of the
equitable right of a third person to the property ; that it has been
uniformly held by the Courts of equity, in such cases, that the
purchaser who has obtained the legal title as a mere security for or

Fair *v.* Howard.

payment of a preëxisting debt, without parting with anything of value, is not entitled to hold the property as against the prior equitable owner ; that in England the law is the same in cases of commercial paper as in Courts of equity in cases touching transfers of property ; that nothing being advanced or relinquished on the faith of the paper, the holder (if he lose it) remains in the same position he occupied before the paper was passed. (*Stalker* v. *McDonald*, 6 Hill, 93 ; *Coddington* v. *Bay*, 20 Johns. 636, and other cases cited by appellant.)

To this it is answered : That the holder foregoes the pursuit of his own debt and thus puts himself, for the time, in a different, and in law, a worse situation ; that the transaction possesses the two cardinal ingredients of a valuable consideration, viz : a detriment to the promisee, and an advantage to the promissor ; that the holder is not left in the same condition he was before, (if the note prove unproductive) having for the time forborne, and in such matters time is of the essence of the transaction ; that the creditor gives time, (more or less) but of necessity some time ; that it is scarcely supposable that one so taking security will not conduct differently on account of the security ; nor would the debtor part with the security, unless he expected more or less indulgence on account of giving it ; that the assumption that time is not in fact given, because it is not expressly agreed to be given, and that, therefore, the indorsee is not placed in a worse position, by letting in the latent equities than he would have occupied had he not received the note, is at variance with general experience, and disregards the only motives inducing the transaction—that forbearance is implied from the nature of the transaction ; that the creditor is lulled into quiet, and the familiar principle applies, that, as between two innocent parties, he must suffer who has done an act by which he has placed it in the power of a third person to defraud the other party ; that the rule is so settled in England (*Poirier* v. *Morris*, 2 El. & Bl. 89) ; that, as to the equities of the case, it is more equitable, that the party who set the note afloat with all the marks of credit and currency upon its face, should suffer, than the one who has so taken it *bona fide* for a debt due ; and that the English courts of equity, where transfers of land are concerned, have recognized

no such distinction as that claimed by Chancellor Walworth, between a preëxisting debt and a fresh loan or advance of money. (*Brush* v. *Scribner*, 11 Connecticut, 396; *Swift* v. *Tyson*, 16 Peters, 1; *Bank* v. *Carrington*, 5 Rhode Island, 515; *Blanchard* v. *Stevens*, 3 Cush. [Mass.] 162; *Gardner* v. *Gager*, 1 Allen, [Mass.] 502; *Le Breton* v. *Pierce*, 2 Allen, 14; *McCarty* v. *Roots*, 21 How. [U. S.] 432; *Smith* v. *Hiscock*, 14 Maine, 449; *Bank* v. *Chambers*, 11 Rich. [Law.] So. Car. 661; *Vallette* v. *Mason*, 1 Indiana, 288; *Gibson* v. *Conner*, 3 Kelly [Georgia] 47; *Allaire* v. *Hartshorne*, 1 Zab. [N. J.] 667; *Succession of Dolhonde*, 21 Louisiana. Am. 4; *Savings, etc.*, v. *Bates*, 8 Conn. 512; *Manning* v. *McClure*, 36 Illinois, 490; *Bank* v. *Vanderhorst*, 32 N. Y. 553; Ib. 596; *Pratt* v. *Coman*, 37 Ib. 443; *Brideport* v. *Welch*, 29 Connecticut, 475; *Robinson* v. *Smith*, 14 Cal. 98; *Atkinson* v. *Brooks*, 26 Vermont, 583.)

There is a direct issue between Chancellor Walworth, 6 Hill *supra*, and some of the judges delivering the opposing opinions above cited, as to what was English law on the point in dispute as to indorsements of paper; but the case of *Poirier* v. *Morris* leaves no doubt that the latter judges are correct in their statement. There is an equally pronounced contradiction between the statement of Chancellor Walworth in 6 Hill, and that of Chief Justice Williams in *Brush* v. *Scribner*, as to the English equity doctrine in cases of sales, etc., of land; and here also the English authorities seem to sustain the statement of Judge Williams, that in English equity, no distinction exists between a mortgage of lands to secure a preëxisting debt, and a mortgage or deed of lands in consideration of a present advance made on the faith of the apparent legal title of the vendor or mortgagor holding such title as trustee.

If the question discussed in the above cited cases were of the first impression, the reasoning of those following *Swift* v. *Tyson* would be, undoubtedly, the more convincing and persuasive; theirs " the plainer and better doctrine." Kent, 3 Com., and if, as seems the fact, *Stalker* v. *McDonald* was decided on a misapprehension of the rules of both English law and equity, the doctrine of *Swift* v. *Tyson* is sustained by precedent as well as upon principle. The decided and increasing preponderance of authority in this country

is certainly in its favor; and there is no sufficient reason why the same doctrine should not apply in cases of transfers of property by the ostensible holder of the legal title.  The above reasoning, by which the indorsee of paper is held entitled to protection, obviously applies to protect the innocent mortgagee of realty; and if the securing a preëxisting debt is a valuable consideration in the one case, it should be considered equally so in the other; and generally the analogy has been treated as perfect.  Thus, in *Stalker* v. *McDonald*, Chancellor Walworth drew the doctrines to be applied to paper from what he conceived to be the equity doctrine as to real estate; and in *Dickenson* v. *Tillinghast*, 4 Paige Ch. 220—the leading American property case so much relied upon for appellants—the only authority he refers to is *Coddington* v. *Bay*, which he pronounces analogous to the case under his consideration, where a mortgagor, the mortgage not being recorded, conveyed the mortgaged premises in payment of a precedent debt.  So Chief Justice Shaw, in *Chicopee Bank* v. *Chapin*, 8 Met. 43, after laying down the rule as to paper, says the same rule holds in regard to real estate.  In another case of mortgage of realty, the Court says: "The analogy between the case of a person claiming the rights of a *bona fide* holder of negotiable paper, and a person claiming to be a subsequent purchaser for a valuable consideration, under the recording acts, is quite perfect, and there is no reason why the rule of law should not apply to them alike." (*Pickett* v. *Baron*, 29 Barb. 508.)  Where one received goods, in payment of a precedent debt, from a fraudulent vendee, it was held that he was a *bona fide* purchaser, on the authority of cases relating to promissory notes, the Court saying: "The question whether one is a *bona fide* purchaser for value must be decided in the same way, upon the same facts, whether he purchases one thing or another." (*Shufeldt* v. *Pease*, 16 Wisconsin, 660; *Babcock* v. *Jordan*, 24 Indiana, 19; *Knox* v. *Hunt*, 18 Missouri, 174.)

In Mississippi, the Court say, in a case involving a sale of land by a trustee: "It is settled that satisfaction of a preëxisting debt makes a *bona fide* purchaser not affected by previous equities: this is the rule as regards negotiable securities, and no reason is per-

ceived why it is not applicable to the purchase of lands. (*Love* v. *Taylor*, 26 Miss. 574.)

In *Wood* v. *Robinson*, 22 N. Y. 567, cited by appellant, it seems to be admitted that in case of property mortgaged to secure a precedent debt, if time is given, the mortgagee will become a *bona fide* purchaser for value, which expression in the statute is said to be derived from Courts of equity; and 1 Paige, 125, is relied on to show that a mortgagee for an old debt is not such a purchaser; but the cases cited in 1 Paige fail to sustain the proposition. We find, then, no warrant in the authorities for the contention of counsel, that " in cases of property as distinguished from commercial paper, the doctrine never was extended beyond the rule applied to cases of commercial paper in the earlier New York cases."

On the point of the disagreement between Chancellor Walworth and Justice Williams as to the true equity rule, the distinction recognised in the English Courts seems to be that stated in some of the recent American cases; that is, between a creditor obtaining a lien or elegit by operation of law *in invitum*, or the assignees of a bankrupt, on the one hand; and a creditor obtaining a lien, as by mortgage, resting in agreement or consent, and contracting for the title to a specific thing, on the other hand—the mortgagee taking what he contracts for : while a judgment or attaching creditor, or assignee in bankruptcy, coming in by the law, is only placed by the law in the shoes of the debtor. (*Field, &c.* v. *Stearns*, 42 Vermont, 112 : *Kelly* v. *Mills*, 41 Mississippi, 273, in which last case the subject is very thoroughly investigated.)

The case of *Plumb* v. *Fluitt*, 2 Anstruther, 432, cited by Justice Williams, seems to be directly in point, and to have been always recognized as authority. That was a bill in chancery by one having an equitable mortgage by deposit of the title deeds, against a person who had taken a subsequent legal mortgage conveying the same premises as security for an antecedent debt. The bill was filed for a sale, and to restrain the defendant from proceeding at law to recover possession of the estate. The plaintiff contended that the defendant was not a purchaser in good faith, because he took his mortgage without getting the title deeds, and so was affected with constructive notice. It was held that, the legal estate

being in the defendant, the question was whether the plaintiff could raise a trust upon his estate, so as to gain a priority for his own demand ; and that it was fully settled that a deposit of title deeds, as a security for a debt, amounted to an equitable mortgage.    In answering the objection that no man would advance money upon an estate without seeing the title deeds, unless with a fraudulent intention, Baron Eyre spoke of the difference between a consideration which was an old debt, and a sum advanced *de novo,* and said there was no such distinction established in equity ; and though he expressed a wish to see it established, it was not, it seems, for the reason suggested by Judge Williams, but because he thought that fraud could with less propriety be imputed to the creditor taking what he could get to secure his debt, than to a purchaser thrusting himself into a purchase. (2 Leading Cases in Equity, 115.)    The bill was dismissed, which could not have been unless the defendant was a *bona fide* purchaser for value.    There was clearly no necessity for discussing the question of notice, on the hypothesis that defendant was not such a purchaser.    This case is approved in 7 Bacon's Abr. 102, where it is said : " Although a deposit of title deeds for the security of a debt amounts to an equitable mortgage, yet if a creditor of the mortgagor, fearing his immediate insolvency, take a conveyance of the same estate without notice of the incumbrance, equity will not prevent him from availing himself of his legal estate."

Now it is settled that, so far as this question of prevailing against a mortgage taken to secure a preëxisting debt is concerned, an equitable mortgagee is viewed as a *cestui que trust,* and occupies the same ground as any other equitable claimant—as Armstrong does here.    *Vide Whitworth* v. *Gaugain,* 3 Hare, 425, where the question was between an equitable mortgagee and subsequent judgment creditors in possession by elegit.    It was decided in favor of the mortgagee, on the ground that his was a trust binding the estate except against *bona fide* purchasers ; that it was immaterial whether the debts of the subsequent incumbrancers were contracted " on the view of the land " or not ; but that the true distinction was between a party contracting for a specific thing, and a party taking a judgment giving him nothing more than a right to that which belongs

to his debtor. So in *Lister* v. *Turner*, 5 Hare, 281, an equitable mortgagee, secured in part for a preëxisting debt, was held a purchaser under the statute 27 Eliz. *Plumb* v. *Fluitt* was recognized in *Meux* v. *Bell*, 1 Hare, 86, as deciding that a mortgage given to secure a preëxisting debt is for value. Treating the principle, that where the same equitable interest has been assigned by the assignor to different independent assignees, he who first gives notice of his title to the legal holder of the interest will acquire priority of right though his assignment be subsequent, if, at the time of taking it, he had no notice, and deciding that it is not necessary for him to make inquiry of the trustee, the Vice-Chancellor says : " The injury he sustains, and which gives him priority, is *ex post facto*. The notice which has the effect of inquiry is given either at the time the money is advanced or afterwards, and the only distinction between the two cases is a distinction between a party who advances money at the time of taking a security, and a party who takes a security for an antecedent debt. The credit which the *puisné* incumbrancer gives to the fund after the notice, is as good a consideration as that of any other creditor who takes a security for an antecedent debt, which is clearly sufficient. *Plumb* v. *Fluitt*."

So, the distinction between an old debt and a fresh advance is said to be one existing in fact, but not recognized in law. (Fisher on Mortgage, 463.) To the same purport—at least where time is given—is the language of Lord Eldon, in *Ex parte Knott*, 11 Vesey, 615. He says : " The assignees have contended that there is a difference between dealing originally for a mortgage, and a debt originally by simple contract, and afterwards continued upon the immediate credit of the land under a new contract ; the creditor waiving his right of insisting upon his debt at present, provided his debtor will give a security upon the land." After distinguishing *Brace* v. *Duchess of Marlborough* as applying to a lien by operation of law, he proceeds : " But that is not the case of a creditor originally by simple contract, who thinks proper to say he will remain such no longer, but will have either payment or a pledge for his money ; that is, for a continuance of the loan, he will have an interest in the land, and that only. The contract is changed.

Before, he could call for immediate payment of what was due ; but after the mortgage he can only call for payment at the day upon which, by the contract, the money is to be paid : a situation altogether different in point of contract." If no time is given and if it cannot be implied, there is force in the argument of counsel in *Ex parte Knott* that it ought not to be required that the creditor should go through the useless ceremony of taking his debt from the debtor and paying it back again to him ; which would put the creditor in the situation of a purchaser. *Ex parte Knott* was a case involving the right to tack, and the right to tack is confined to a *bona fide* purchaser for a valuable consideration without notice. (Story Eq. Jur., Sec. 416.) But a simple contract, bond or mortgage creditor, who takes a mortgage to secure his original debt, is as much entitled to tack as a mortgage creditor from the beginning. (Fisher on Mortgage, 360.)

In *Bayley* v. *Greenleaf*, 7 Wheaton, 54, Chief Justice Marshall, taking the distinction between parties claiming by operation of law, and creditors contracting for a specific lien to secure their debts, decided that a vendor's lien could not prevail against a creditor, to secure whose debts the vendee had conveyed the premises to a trustee. He said : " The lien of the vendor, if in the nature of a trust, is a secret trust ; and although to be preferred to any other subsequent equal equity unconnected with a legal advantage, or equitable advantage, which gives a superior claim to the legal estate, will be postponed to a subsequent equal equity connected with such advantages. The vendor should reduce his lien to a mortgage so as to give notice to the world. If he does not, he is in some degree accessory to the fraud committed on the public by an act which exhibits the vendee as the complete owner of an estate on which he claims a secret lien."

This case was commented on and disapproved by Chief Justice Gibson, in *Twelves* v. *Williams*, 3 Wharton, 485, but for no reasons which impugn its correctness as applied to the case before us. Judge Gibson says : " I know of no case, in which the abstract existence of debts was held to be a valuable consideration for a transfer of property to trustees for distributive payment, except *Bayley* v. *Greenleaf*. But where the creditors are party to the

deed, there is a clear valuable consideration in the forbearance of suit and mutual accommodation expressed by the terms or *implied by the nature of the transaction.*" *Bayley* v. *Greenleaf* has received the unqualified indorsement of Kent and Storey. (4 Kent's Comm. 154–176 ; 2 Story Equity. Jur., Sec. 1229.) It is also cited with approval in 1 Leading Cases in Equity, 371, *et seq.*, and in many cases there cited ; and though a vendor's lien is there distinguished from a trust or equitable mortgage, there seems to be no sound or practical reason for the distinction, so far as the question whether the plaintiff in this case is a *bona fide* purchaser for value is concerned ; and accordingly in *Kelly* v. *Mills*, *supra*, a vendor's lien was allowed to prevail against judgment creditors and others deriving rights by operation of law.   Every reason adduced to prove that a vendor's lien should not prevail against a *bona fide* mortgagee for a preëxisting debt is as cogent against the enforcement of a parol trust like Armstrong's, or any other secret equity, against such a mortgagee ; and that a vendor's lien will not so prevail seems well sustained by authority.   (1 Leading Cases in Equity, 235, 336, 371, notes to *Mackreth* v. *Symmons*.)   In the principal case, Lórd Eldon said, in alluding to the argument that the money was not lent on the faith of the land : " There is a great difference between the effect of a judgment as attaching upon the land, and a special agreement by a creditor for a security upon the land." *Vide. Kelly* v. *Mills*, *supra*, as to opinions of Kent and Storey on this point.

In a case where goods fraudulently obtained were mortgaged by the vendee to secure a preëxisting debt, no time being given, the mortgagee was held to be a *bona fide* purchaser for value, and the conclusion said to be supported by justice and policy and analogous principles. (*Gibson* v. *Moore*, 7 B. Monroe, 95.) In *Potts* v. *Blackwell*, 4 Jones Eq. [N. C.] 68, the Court say : " A deed in trust executed *bona fide* for the security of actual creditors, whether for debts old or new, must be regarded as a conveyance for value, under the statute, 27 Eliz.: and a mortgage has always been considered as standing on the same footing as a deed in trust." In *Birdseye* v. *Ray*, 4 Hill. 163, the Supreme Court of New York, composed of Judges Nelson, Bronson, and Cowen, held that a

*bona fide* preëxisting debt constitutes a valuable consideration ; and though the Court of Errors, in 5 Denio, held differently, the authorities cited seem either inapplicable, or cases relating to parties coming in by operation of law. See also, to same effect as *Potts* v. *Blackwell, Babcock* v. *Jordan,* 24 Indiana ; *Alexander* v. *Ghiselin,* 5 Gill. [Md.] 186, and cases in notes to *Mackreth* v. *Symmons, supra.* The cases cited to the contrary, by appellant, seem to have been decided solely on the authority of *Dickerson* v. *Tillinghast,* and the early New York cases relating to commercial paper, and must stand or fall with them. Few questions in the English Courts have been more thoroughly discussed or maturely considered than those raised in *Whitworth* v. *Gaugain.* When the case was first heard, it came before Lord Cottenham, and he expressed himself strongly in favor of sustaining the claims of the creditors against the equitable mortgagee. It next came before Vice-Chancellor, Wigram, who, as we have seen, and after an elaborate discussion, held in favor of the mortgagee, and his decision was affirmed on appeal. (1 Phillips.) Before the question was finally settled, it was fully reviewed by the text writers. · (Miller's Law of Equitable Mortgages, 148.) But nowhere do we find even an intimation of the doctrine of *Dickerson* v. *Tillinghast.* If such had existed anywhere in English equity, is it possible that it could have escaped the notice of such masters of that branch of jurisprudence as those who treated the case of *Whitworth* v. *Gaugain ?* And had it existed, it would have at once ended the controversy—for a judgment creditor certainly does not put himself in a worse situation by giving time—he simply, by availing himself of the law, secures his debt.

In the case before us there is, however, no necessity for resorting to any *presumption* of forbearance, or for implying it from the nature of the transaction. The note was made payable twelve months after date, thereby suspending the plaintiff's right of action on the debt until the maturity of the note. (*Pratt* v. *Ceman,* 37 N. Y. 442.) If we can rely on the analogy of the rule concerning commercial paper, all the cases, those of New York included, concur that if the party receiving the note parts with anything valuable he is not subject to equities, and that forbearance under a binding

agreement to forbear is parting with something valuable. (*Blanch-ard* v. *Stevens*, 3 Cushing, 168 ; *Nagle* v. *Lyman*, 14 Cal. 455.) And if we cannot rely on that analogy, still the forbearance brings the case broadly within the reasoning of Lord Eldon in *Ex parte Knott*, Chief Justice Gibson in *Twelves* v. *Williams*, and many of the other cases above cited.

Then, is the plaintiff clothed with the legal estate within the rule protecting *bona fide* purchasers in equity ? It will not be denied that in an English Court of Chancery he would be so considered. (*Colyer* v. *Finch*, 5 House of Lords Cases, 905.) The English equity doctrine is thus stated by Spence (2 Eq. Jur. 648 ; 1 Ib. 599–604) : " Whether the mortgagor be in possession or not, he is considered until foreclosure, excepting where the interests of the mortgagee may be affected, as substantially—as according to the Roman law he was actually—the owner of the estate. The estate of the mortgagee is considered for almost all purposes as personal estate ; the equity of redemption as an estate in the land." That is, Courts of Equity—looking at the substance and disregard-ing the form — consider that the title passes only so far as is necessary to effectuate the real purpose of the parties, and to give to the mortgagee the full benefit and protection of the security ; the mortgage passes the legal title to the extent that it is necessary such title should pass in order to enable the mortgagee to realize the full fruition of the contract, the object of which is to bind the land absolutely to the payment of the debt ; consequently the mortgagee could bring ejectment, for the reason given that " in order to render his pledge available and give him the intended benefit of his security, he was necessarily indulged with this, the only instrument by which he could obtain possession of the land mortgaged." This right has been taken away by our statute, and for that purpose or to afford that remedy the legal title no longer passes in this State. But in other respects the rule is unchanged, and in the language of one of the cases, " The mortgage is a potential conveyance of the legal estate ; and whenever the mort-gagee sees fit to make that election, the mortgage becomes in his hands a conveyance of the legal estate for all purposes necessary to the protection of his interest, and to enable him to avail himself

Fair *v.* Howard.

of the security." (*Rigney* v. *Lovejoy*, 13 N. H. 252; *Great Fall Co.* v. *Worster*, 15 N. H. 444; *Smith* v. *Moore*, 11 N. H. 61; Ib. 221; *Hutchings* v. *King*, 1 *Wallace*, [U. S.] 57; *Presbyterian &c.* v. *Wallace*, 3 Rawle, 130; *Clark* v. *Beach*, 6 Conn. 163; *Ewen* v. *Hobbs*, 5 Met. [Mass.] 3.)

To consider the plaintiff the owner in fee for the purposes of this case, is to carry out what Shaw, C. J., in *Ewen* v. *Hobbs*, says are the two great objects of a mortgage: First, in the form of a conveyance in fee is given to the mortgagee an effectual security. Second, there is left to the mortgagor, and to purchasers, creditors, and all others claiming direct through him, the full and entire control, disposition and ownership of the estate, subject only to the paramount purpose, that of securing the mortgagee. It cannot be objected that the plaintiff is himself asking relief in equity, because " for the purpose of the question whether a Court of Equity will interfere against a purchaser for a valuable consideration without notice, a foreclosure is not relief at all." (*Colyer* v. *Finch*, 2 Leading Cases in Equity, 59, 14.) Armstrong occupies the position of the plaintiff in *Plumb* v. *Fluitt*, seeking equitable relief, viz: the enforcement of his trust against a *bona fide* purchaser.

That the plaintiff is a purchaser within the meaning of and protected by the recording acts and Statute 27 Eliz., is well settled. (*James* v. *Morey*, 2 Cowen, 290; *Pierce* v. *Faunce*, 47 Maine, 514; *Porter* v. *Green*, 4 Iowa, 571; *Martin* v. *Jackson*, 27 Penn. 504; *Gere* v. *Cushing*, 5 Bush, [Ky.] 304; *Snyder* v. *Hett*, 2 Dana, 204; *Ledyard* v. *Butler*, 9 Paige, 136; *Chapman* v. *Emery*, Cowper, 280.)

The judgment and order appealed from should be affirmed, and it is so ordered.

By LEWIS, C. J., and WHITMAN, J.:

Without indorsing the proposition that a mortgagee for an antecedent debt occupies the position of a *bona fide* purchaser for value, we concur in the opinion of Justice Garber.