## WILLIAM R. MILLIGAN
### v.
## ANDREW J. O'CONOR ET AL.

1. ASSIGNMENT—STATUTORY.—A valid assignment can now only be made under the statute, and when so made the estate must be administered and distributed substantially in conformity with its provisions, and all voluntary assignments for the benefit of creditors now stand on the same footing.

2. SAME—WHEN IT OPERATES TO HINDER AND DELAY CREDITORS.—The placing of property in the hands of trustees or assignees for any other purpose than to enable them to distribute it or its proceeds among creditors must necessarily have the effect to in some degree hinder and delay creditors in the collection of their debts.

3. SAME—RELEASE OF JUDGMENT LIEN.—Where judgment creditors have the property levied upon turned over by their consent to trustees with power to continue business, etc., such action will operate as a release of the lien of their judgments, and will leave the property open to the liens of subsequent judgment creditors who have taken no part in such proceedings and have not in any way consented thereto.

4. GENERAL ASSIGNMENT FOR SPECIFIC PURPOSE NOT AN EQUITABLE MORTGAGE.—The arrangement in this case held, not to be an equitable mortgage, for it and the deed included all the property of all kinds of the company, and had the effect of a general assignment, and not of a mortgage of, or trust placed upon, specific property.

APPEAL from the Circuit Court of La Salle county ; the Hon. C. BLANCHARD, Judge, presiding. Opinion filed June 8, 1886.

Mr. R. D. McDONALD and Mr. WALTER REEVES, for appe'-lant; cited Hanchett v. Waterbury, Chicago Legal News, August 15, 1885; Bodley v. Goodrich, 7 How. (U. S.) 276; Brown v. Parkhurst, 24 Ill. 257.

Mr. LESTER H. STRAWN and Mr. JAMES W. DUNCAN, for appellees; that courts will enforce an equitable assignment, cited Carr v. Waugh, 28 Ill. 418; Morris v. Cheney, 51 Ill. 451; Chapman v. Shattuck, 3 Gilm. 49; Hodson v. McConnel, 12 Ill. 170; Creighton v. Village of Hyde Park, 6 Bradwell, 272; Dehner v. H. F. & R. Mills, 7 Bradwell, 47.

BAKER, J. This was replevin in the Circuit Court of La Salle county, prosecuted by appellees to a final judgment in said court in their favor against appellant, sheriff of the county.

The action was for certain horses, mules, wagons, beer kegs, beer casks, and other goods and chattels. The pleas of the sheriff alleged property in the Eliel Brewing Company, and justified under two executions, one in favor of James J. Vernon and the other in favor of the Streator National Bank.

In May, 1884, the Eliel Brewing Company, a corporation located at La Salle, was in debt to the amount of some $125,000, and was in failing circumstances, and its real estate was incumbered with a mortgage for $25,000. On the 19th day of that month judgments amounting in the aggregate to $18,-452.57 were entered against it by confession, and executions immediately issued and placed in the hands of the sheriff; and on the following day attachment suits for sums aggregating $16,046.54 were commenced against it, and the writs levied on the real estate. Other suits and other judgments followed in the wake of these, including a judgment for $1,050 in favor of the Streator National Bank, rendered May 22, 1884, and a judgment in favor of James J. Vernon for $481.50, entered June 12th of that year. The executions issued upon the judgments of May 19th were on that day levied on the property of the corporation, with the exception of one execution in favor of Charles W. Holzheimer for

Milligan v. O'Conor.

$1,650, which was returned "no property found," and made the foundation for a creditor's bill, which was filed May 22, 1884. There was a large quantity of beer in process of manufacture, and the property of the company was otherwise in bad shape to be realized upon, and on the 23d day of May, by common consent of the parties holding judgments or prosecuting suits against the corporation, a receiver was appointed by the court. The receiver took charge of the property and business of the company, but he had neither money nor credit, and was in no condition to carry on the business, and the creditors became anxious and dissatisfied.

In September, 1884, an arrangement was made between the Eliel Brewing Company and the principal creditors, whereby the levies made upon the executions of May 19th, and attachments of May 20th, were abandoned, the creditor's bill dismissed and the receiver discharged, the real estate of the company conveyed to appellees by deed, and an instrument in writing and under seal, bearing date September 16, 1884, executed both by the corporation and by appellees. The instrument stated that it had been agreed upon by the company and its several stockholders and creditors, that the business of the company should be put into the hands of appellees as trustees, to be managed for the benefit of the creditors. It then assigned to appellees in trust the certificates of shares of the capital stock of the company, and all its personal property, stock in trade, beer, materials for the manufacture of beer, bills receivable, accounts and other evidences of indebtedness, money in the hands of the receiver, and the accounts, notes and bills receivable due him as such receiver, and conveyed to them in trust all the real estate of the company. It then provided that the trustees should carry on the business of the company in such manner as should in their judgment be for the best interest of the creditors, and continue the same as long as profitable and until the creditors should be fully paid, unless in the judgment of the trustees it should be for the interest of the creditors sooner to close the same out; and that they should annually, if practicable, declare a *pro rata* dividend to each creditor from the

profits of the business only for such amount as the profits of the business should in their judgment warrant and justify, leaving a sufficient sum in their hands to carry on the business successfully; and that when the profits of the business or the avails of the property and assets of the company should form a sufficient sum to pay all the creditors in full, then it should be the duty of the trustees to pay each creditor the amount due him, and reconvey to the company the real estate remaining unsold, if any, and all the personal property and choses in action in hand, and re-deliver to the several stockholders or their assigns the certificates of shares of capital stock belonging to them respectively, but that the trustees should not be required to carry on the business any longer than in their judgment should be for the interest of the creditors, they on the contrary being fully authorized to close out the business, and sell and dispose of all the assets and divide the avails of such assets among the several creditors *pro rata* whenever in their judgment it should be for the best interests of the creditors to do so, the trustees being the sole judges whether the business should be closed out before the creditors could be paid in full. The instrument also gave the trustees numerous other powers, and contained various other provisions unnecessary now to mention.

Appellees took immediate possession of all the property of the Eliel Brewing Company, and it being out of repair and in bad condition, they expended some $46,000 in repairing the buildings, casks and vats and in buying new kegs and material of various sorts, all of which has been paid but about twelve or thirteen thousand dollars. On the 18th of December, 1884, an execution was issued on the judgment in favor of James J. Vernon and against the company, and on the next day an execution was issued on the judgment in favor of the Streator National Bank against the company, and on the 23d of said December appellant levied these two executions upon the personal property in controversy, and which was at the time in possession of appellees. Vernon and the Streator National Bank were not present or represented at the meeting or meetings that resulted in the arrangement between the

Milligan v. O'Conor.

company and its creditors. They were, however, notified the meetings of the creditors would be held, and invited to attend the same, and were afterward informed of the arrangement made, but did nothing either in affirmance or disaffirmance of such arrangement prior to the suing out of their executions in December.

As Vernon and the bank did not attend or participate in the meetings of the creditors, or give their assent to the action taken whereby the property of the Eliel Brewing Company was assigned or transferred to appellees, they are not bound by such transfer or assignment, unless either it was valid in law, or their conduct with reference to it, or the property, or the other parties in interest, has been such as to preclude them from now objecting. The act of May 22, 1877 (Laws of 1877, p. 116), concerning voluntary assignments, professes upon its face to be applicable to all cases of such assignments thereafter made for the benefit of creditors, and its provisions seem to cover the whole ground or entire subject-matter.

This is the view taken by the Supreme Court of the State. In Hanchett v. Waterbury, Chicago Legal News, Aug. 15, 1885, that court said, in speaking of this act, that it was essentially in its framework and detail a general insolvent law, and so intended by the legislature; that a valid assignment can now only be made under the statute, and when so made the estate must be administered and distributed substantially in conformity with its provisions, and that all voluntary assignments for the benefit of creditors now stand on the same footing. In Freydendall et al. v. Baldwin et al., 103 Ill. 325, the court held that by this statute the whole management of the estates of insolvent debtors, under voluntary assignments, is committed to the jurisdiction of county courts.

If the writing here in question is to be regarded as a voluntary assignment, it is very plain it is not in conformity with the requirements of the statute ; it allows the assignees to continue the business of the insolvent corporation, and in the name of that corporation, for an indefinite period, and pay dividends to the creditors only when and to such amounts

as they see fit; and it takes the control of the insolvent estate wholly out of the hands of the county court, and places it beyond the reach of creditors, and leaves it entirely optional with the assignees whether the business shall ever be closed out or the property and assets sold and disposed of, and the proceeds applied in payment of the debts; and, after the assignees have carried on the business for an indefinite period and paid all debts, it provides that the real estate unsold, and all the personal property and choses in action, shall be returned to the company, and the certificates of shares in the capital stock of the corporation re-delivered to the several stockholders. These and other extraordinary powers not allowed by the statute are given by the writing under consideration to the trustees or assignees, and at the same time they are freed from the necessity of giving a bond, as is required by the statute, for the security of the creditors, and are relieved from the various restrictions imposed by the act for the purpose of guarding the interests of such creditors.

Without any reference to the circumstances of its nonconformity with the requirements of the statute now in force, the deed of trust or assignment was void as to the creditors not consenting thereto, as tending to delay, hinder and defraud such creditors. The placing of property in the hands of trustees or assignees for any other purpose than to enable them to distribute it or its proceeds among creditors must necessarily have the effect to, in some degree, hinder and delay creditors in the collection of their debts. Gardner v. Commercial National Bank, 95 Ill. 298, is a case analogous to this, and the powers there conferred upon the trustees by the deed of assignment were substantially those conferred by the deed here involved, and it was held the deed was void as against creditors.

It is suggested by appellees that the reason why an assignee may not be invested with full and unlimited powers to continue the business of the assignor is, that it acts as a fraud upon the creditor in hindering and delaying him, and it is urged that in the case at bar the reason of the rule fails and the rule itself should not be applied. In that connection

Milligan v. O'Conor.

it is insisted that all the property of the Eliel Brewing Company was covered by executions and by other liens which were first liens upon and sufficient to exhaust it; and that neither the Streator National Bank nor Vernon could in any event be damaged by the arrangement that was made for the transfer of the property to appellees. The answers to this suggestion are several. In the first place, we do not understand the evidence as showing that as matter of fact the value of the property levied upon was not more than sufficient to pay the liens upon it, but that in the condition the property was in, and under the circumstances surrounding it, it could not, in the opinions of the witnesses, have been sold for more than enough to pay those liens; *non constat* that the bank and Vernon would not have taken steps, in order to let in their own judgments, by which the property would have sold for its full and actual value.

They also had the right to test the validity of the liens and of the claims upon which they were founded. They might have found other property which had not been levied on, if all the personal property of whatever kind and nature, and all the real estate whatsoever of the brewing company, had not been transferred and conveyed to appellees. The creditors who held the first lien upon the personal property of the company by virtue of their executions and the levies thereon, voluntarily abandoned their levies and waived their rights under the executions, without having been induced to do so by any act or request on the part of either the bank or Vernon, and the circumstance of this formerly existing lien is no longer a fact to be considered in determining the validity of the deed of assignment from the company to appellees, none f whom were plaintiffs in any of the executions that had been levied. At most the matter suggested has reference only to an equity supposed to exist as between the creditors whose executions were levied and the bank and Vernon; and it throws no light upon the question of the legal title of appellees to the property involved in this controversy. The assignment being the voluntary act of the assignors, the assignees represent simply the assignors and not the creditors

in respect to the title to the assigned property; and they stand in no priority to the creditors, and can not arrogate to themselves any of the attributes or rights of the creditors. Twelves v. Williams, 3 Wharton, 485; Vandyke v. Christ, 7 Watts & Serg. 373; Housel v. Cremer, 13 Neb. 298.

It is also urged that courts of law will recognize and enforce an equitable mortgage when the mortgagee is in possession; and that this transaction amounted to an equitable mortgage in favor of the creditors who held prior liens, and that they have possession through appellees as their agents. We think that the arrangement made between the creditors and the brewing company, by virtue of which the deed of trust was made to appellees, can not be regarded and sustained as an equitable mortgage, for the arrangement and deed included all the property of all kinds of the brewing company and had the effect of a general assignment, and not of a mortgage of or trust placed upon specific property.

The mere fact that the Streator National Bank and Vernon gave no notice of objection to what had been done, and failed to sue out executions upon their judgments until some three months after the assignment was made, did not have the effect of estopping them from claiming that which they now claim. As they were not parties to the arrangement that was made, and have done nothing that would work an 'estoppel, we think the assignment was fraudulent and void as to them, they being creditors of the brewing company.

In our view, the justification pleaded in bar of the action by appellant was established by the evidence.

The finding and judgment of the circuit court having been otherwise, that judgment is reversed and the cause remanded.

Reversed and remanded.