Ernest L. SMITH, Trustee of the E. L. Schmidt Trust, Appellant,

v.

UNITED STATES of America, Appellee.

No. 10572.

United States Court of Appeals Fourth Circuit.

Argued Nov. 3, 1966.

Decided Dec. 8, 1966.

John Lewis Kelly, Washington, D. C., for appellant.

Robert Waxman, Atty., Dept. of Justice (Mitchell Rogovin, Asst. Atty. Gen., Meyer Rothwacks and Melva M. Graney, Attys., Dept. of Justice, Thomas J. Kenney, U. S. Atty., and Ronald T. Osborn, Asst. U. S. Atty., on brief), for appellee.

Before SOBELOFF, BOREMAN and J. SPENCER BELL, Circuit Judges.

J. SPENCER BELL, Circuit Judge:

This is an action [1] for a refund of income taxes paid upon a deficiency assessment for the years 1953 and 1954. While a number of issues were litigated in the district court, the sole question on this appeal is whether the taxpayer-trustee is entitled to recover taxes paid by him on a deficiency erroneously assessed against the trust, with respect to income distributed to the life beneficiary. The district court held that the Government was entitled to retain the funds upon equitable principles. We cannot agree, and to this extent we reverse the judgment.

The grantor, E. L. Schmidt, a resident of the District of Columbia, established a trust in 1931. Under its terms the grantor was to receive the income for life. Upon his death one-half of the corpus was to remain in trust during the life of his son Eugene, who was to receive only the income therefrom. The trust contained provisions which prohibited Eugene from pledging or otherwise disposing of his interest in the trust. Upon his death, the remainder was to go outright to such of the grantor's heirs as should be appointed by the will of the trustee or, in default of appointment, to such of the grantor's heirs as should take under the statute of distribution of the District of Columbia. The grantor died in 1937 and since that date up to and including the taxable years 1953 and 1954 Eugene received his one-half of the income. Included in the assets of the trust were notes in the face amount of $275,000.00 upon which payments were made from 1944 through 1954. These receipts were shown on the trustee's annual fiduciary returns for each year including 1953 and 1954 as long-term capital gains resulting from an installment sale of the notes. That portion of the payments which the trustee determined to be capital gain was distributed as received to the beneficiary. Eugene annually returned his share of these distributions as capital gain and paid the tax thereon. The 1953 and 1954 returns were audited and an overassessment was determined as to the tax paid by Eugene on these distributions, but intsead of refunding the amount of the overassessment to Eugene, it was credited on a deficiency assessed against the trustee. The district director's basis for the deficiency assessed against the trustee was his determina-

---

1. The opinion of the district court is reported at 248 F.Supp. 873 (D.Md.1966).

tion that the income was "ordinary income rather than capital gains [2] and increase in corpus is taxable to the fiduciary." The district court agreed that the receipts were ordinary income but rejected the Government's contention that they were taxable to the trust. Ordinarily this would call for a refund, but the trial court accepted the Government's contention that the principle of equitable recoupment permitted the Government to set off the unpaid balance of Eugene's taxes [3] against the amount paid by the trustee because Eugene would receive the benefit of a refund and he was in fact liable for the tax though the statute of limitations barred the Government from going against him directly. In coming to this conclusion the court said:

"Plaintiffs contend that Stone v. White [301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265] is distinguishable because in that case the deficiency assessment was satisfied out of current income, while in the present case the income for the years in question had been distributed to Eugene, the beneficiary, and the deficiency had to be satisfied from another source. The record does not show what the other source was; presumably it was paid from or borrowed on the credit of the assets of the Trust, and repaid out of the income of later years. That distinction does not require a different result in this case. Eugene was and is the sole life beneficiary of the Trust, and received the income from the Trust which was reported as capital gain rather than as ordinary income. Any recovery herein by the Trust would inure to his benefit." 248 F.Supp. at 880.

■ Counsel for the trust insists that there is no factual basis for the court's assumption that the money to pay the tax was borrowed or obtained from "some other source" and particularly that it had been repaid. We think it apparent that the able trial judge simply misinterpreted the remark of counsel for the taxpayer in reaching the conclusion that Eugene had agreed to repay the amount of the tax to the trustee. Counsel for the trustee points to an express stipulation entered into between the parties that the tax was paid by the trustee from the corpus of the estate because all of the income for the years in question and the prior years had been paid out by the trust. The only evidence in the record to which the Government points to support the court's finding that Eugene had agreed to repay the amount of the tax was the following statement made by counsel for the trustee:

"There has been set up on the books an account denominated 'Eugene A. Smith, Special' in the amount of that tax.

"(Further remarks were off the record.)

" * * * The special account was set up on the theory that the tax having been paid out of corpus, Eugene A. Smith might be called upon to replace this corpus payment in the event the tax has to be borne by the Trust, as an ultimate matter."

We are forced to the conclusion that there is not in the record before us any substantial basis for the court's finding either that the amount of the assessment was borrowed or that it was repaid or that an agreement between the trust and the beneficiary has been reached that it could be repaid out of income. Since it is the Government that here asserts the doctrine of equitable recoupment, we think it had the burden to prove the facts which would invoke application of the rule. Such burden it has not overcome.

2. The trustee contended that the notes were sold but the Commissioner determined that the notes which were secured by a mortgage were collected rather than sold. See the opinion of the district court.

3. Eugene had computed the tax on the capital gain. The trust was required to pay on ordinary income.

We think that Stone v. White, 301 U.S. 532, opinion recast, 302 U.S. 639, 57 S.Ct. 851, 81 L.Ed. 1265, 82 L.Ed. 497, rehearing denied, 302 U.S. 777, 58 S.Ct. 260, 82 L.Ed. 601 (1937), is distinguishable and that the doctrine of equitable recoupment should not be extended to permit the Government here to set off against the trust's right to a refund the moral obligation of a beneficiary who has such a limited right in that trust as does Eugene in this case. The doctrine itself is a judge-made exception to the legislative policy of barring claims for and against the Government in tax matters by statutes of limitations, which in final analysis are themselves based upon an equitable principle. Cf. McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46 (1937). Under the terms of the trust, the beneficiary could not mortgage, pledge, or otherwise encumber his interest in the corpus of the trust or his right to the income; it was not liable for his debts and even the income was not his until placed in his hands. While we would do nothing more than required by law to insulate the spendthrift against his obligation to pay his taxes, such trusts are lawful in the District of Columbia, e. g., Morrow v. Apple, 58 App.D.C. 171, 26 F.2d 543 (1928), and therefore we must protect the rights of the trustee and of the remaindermen in these circumstances. Both would be jeopardized, if the judgment were allowed to stand, under the facts of this record, the first because Eugene is not a party to this suit and the withholding of income from Eugene to replace the corpus could subject the trustee to the burdens of a lawsuit, and the latter because if the corpus were not restored before Eugene's rights are terminated by death, the remaindermen would suffer the loss. We now turn to the authority upon which the Government depends on this appeal.

In Stone v. White, supra, the Court allowed equitable recoupment against a trustee of a testamentary trust for the taxes of a beneficiary, but there the Court expressly stated that the case involved a sole beneficiary and the taxes had been paid out of income already on hand and payable to the beneficiary. Thus there was a complete identity of interest which justified the Government in recouping a tax owed by a beneficiary against a tax erroneously paid by the trustee after the statute of limitations had barred its right to collect against the beneficiary. The rule has many limitations. See 10 Mertens, Income Taxation § 60–10 (Zimet ed. 1964). The Supreme Court indicated the narrowness of the Stone ruling in distinguishing it in McEachern v. Rose, 302 U.S. 56, 62–63, 58 S.Ct. 84, 82 L.Ed. 46 (1937), and other subsequent cases have drawn what we think are sound distinctions which prohibit the Government from applying the rule here.

In the case of Proctor v. White, 28 F. Supp. 161 (D.Mass.1939), the testatrix had created testamentary trusts for the benefit of her husband and several children giving each a proportionate share of the net income for life. The executors had paid to the husband his share of the annual income for several years during the administration of the estate and before the trusts were set up. Neither the husband nor the executors paid income taxes on these sums under the theory that they were in lieu of his curtesy rights and did not constitute taxable income to either. The Commissioner acquiesced in this until the point of law was settled by the Supreme Court in the case of Helvering v. Butterworth, 290 U.S. 365, 54 S.Ct. 221, 78 L.Ed. 365 (1933); he then assessed the tax against the estate, which paid it and sued for a refund. As one defense the Commissioner pleaded equitable recoupment, citing Stone v. White, supra. The court distinguished the *Stone* case, saying:

"In that case there was one beneficiary and it was admitted that her tax liability was more than the trustees were claiming to recover and any recovery would inure to her sole benefit. * * * The taxes in the present case in the first place were assessed by the Commissioner of Internal Revenue against

the executors on the theory that it was a capital expenditure and it was charged to principal on the books of the estate and consequently any return of the money here claimed would go back to the corpus of the estate. The defendant has in no way proved, even if it were decisive, that James H. Proctor would be the sole beneficiary in the event of a recovery. * * * Further, it appears that those taking by power of appointment under the will might have some interest in this particular sum, if returned, being retained in the corpus of the estate." 28 F.Supp. at 166–167.

The authority of this case is somewhat weakened by the Court's alternative grounds, i. e., that the Government had signed closing agreements with the beneficiary taxpayer on the years in question, but that ground goes to the general principles of recoupment and does not, we feel, weaken the rationale of the Court's distinction of the *White* case, which is the Government's principal if not sole reliance in the case at bar.

We find support for our decision in the reasoning of the court in Sewell v. United States, 19 F.Supp. 657 (Ct.Cl. 1937), where the remainderman sued for refund of a tax erroneously paid by the trust on a sum distributable to a beneficiary who was entitled to receive the income of the trust up to a fixed amount. The trust earned in excess of the amount, but the trustees did not deduct on their return the amount due the beneficiary nor did the beneficiary pay any tax thereon. The Government defended on grounds of equitable recoupment, contending that the statute of limitations barred it from proceeding against the beneficiary and relying on Stone v. White, supra. But the court distinguished *Stone,* pointing out that in that case the beneficiary was the sole person entitled to the income from which the tax was paid, whereas in this case the beneficiary's right to income was limited to a fixed amount and the trustee's payment of the tax in addition to disbursement of the fixed amount of the income to the beneficiary deprived the residuary legatee of his rightful property. "It is true," the court said, "as the * * * [Government] contends, that this income is only taxed once, but the answer to that is the wrong party has been taxed, and the residuary beneficiary who brings this suit has had his interest diminished to that extent." 19 F.Supp. at 663.

We do not think that Smith v. United States, 22 F.Supp. 1011 (E.D.Pa.1938), is contrary. In that case the trustees paid the income from a testamentary trust to the decedent's widow for the questioned years. The widow paid tax on the income and subsequently died. Thereafter her executors obtained a refund of the amount paid, and it was distributed to her legatees, her four sons who were also remaindermen under their father's testamentary trust. The tax was then assessed against the trustees of the testamentary trust, who paid it. The Supreme Court then ruled in Helvering v. Butterworth, supra, that the beneficiary, not the trust, was liable for the tax, and the trustees sued for a refund. The court allowed the Government's plea of equitable recoupment, pointing out that the beneficiaries of both estates were identical, that they had received the erroneous refund for the taxes their mother had paid, and that, since any recovery by the trustee would also inure to them as remaindermen, they would be unjustly enriched if recovery was allowed.

We distinguish this case in that the remaindermen were known and it was affirmatively determined that they would not be injured by denial of the refund to the trust. In the case at bar, the remaindermen are not known, and it is clear that denial of the refund will injure them. Additionally, it should be noted that at least two and apparently all of the four sons in the Pennsylvania case were parties to the suit, though in representative capacities, so that they had actual notice that their rights were being adjudicated. In the present case the life tenant, Eugene, is not a party,

nor is he represented. If the Government is permitted to keep the trust's money, the remaindermen will bear the loss, and this court has no power to protect them by decreeing that Eugene make the trust whole or by authorizing the trustee to withhold future income from him, even if we thought such action proper, since we have no jurisdiction over Eugene. Equitable relief will not be granted to the possible detriment of innocent third parties.

We hold, therefore, that application of the doctrine of equitable recoupment as enunciated in Stone v. White, supra, is improper in this case. The case is remanded for judgment in accordance with this opinion.

Remanded.