**132 Nev., Advance Opinion 5**

# IN THE SUPREME COURT OF THE STATE OF NEVADA

SHADOW WOOD HOMEOWNERS
ASSOCIATION, INC.; AND GOGO WAY
TRUST,
Appellants,
vs.
NEW YORK COMMUNITY BANCORP,
INC.,
Respondent.

No. 63180

**FILED**

JAN 2 8 2016



TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a district court order granting summary judgment in a quiet title and declaratory relief action. Eighth Judicial District Court, Clark County; Abbi Silver, Judge.

*Vacated and remanded.*

Holland & Hart LLP and Patrick John Reilly, Las Vegas; Alessi & Koenig, LLC, and Bradley D. Bace, Las Vegas; Tharpe & Howell and Ryan M. Kerbow, Las Vegas,
for Appellant Shadow Wood Homeowners Association, Inc.

Law Offices of Michael F. Bohn, Ltd., and Michael F. Bohn, Las Vegas,
for Appellant Gogo Way Trust.

Brooks Hubley LLP and Gregg A. Hubley, Las Vegas; Pite Duncan, LLP, and Kenitra A. Cavin, Las Vegas,
for Respondent.

_____

BEFORE THE COURT EN BANC.

16-02947

## OPINION

By the Court, PICKERING, J.:

This is an appeal from a district court order setting aside a trustee's deed following a homeowners' association (HOA) assessment lien foreclosure sale. The district court held that NRS 116.3116(2) (2013) limited the HOA lien to nine months of common expense assessments and that the HOA acted unfairly and oppressively in insisting on more than that sum to cancel the sale; that the bid price was grossly inadequate; and that the foreclosure sale buyer did not qualify as a bona fide purchaser for value. The appellants are the HOA and the lien foreclosure sale buyer whose trustee's deed the district court set aside. They argue that NRS 116.31166 (2013), which says that certain recitals in an HOA trustee's sale deed are "conclusive proof of the matters recited," renders such deeds unassailable. We disagree and reaffirm that, in an appropriate case, a court can grant equitable relief from a defective HOA lien foreclosure sale. *E.g.*, *Long v. Towne*, 98 Nev. 11, 639 P.2d 528 (1982). We conclude, though, that the district court erred in limiting the HOA lien amount to nine months of common expense assessments and in resolving on summary judgment the significant issues of fact surrounding the parties' conduct, the HOA lien amount, the foreclosure sale buyer's status, and the competing equities in this case. We therefore vacate and remand.

### I.

The parties to this case are the bank that held the note and first deed of trust on the property (respondent New York Community Bank, or NYCB), the HOA (appellant Shadow Wood Homeowners Association, or Shadow Wood), and the buyer at the HOA lien foreclosure sale (appellant Gogo Way Trust). The original homeowner is not a party.

She lost the property, a condominium, on May 9, 2011, when NYCB foreclosed on its first deed of trust. At the time NYCB foreclosed, the note securing its first deed of trust had an outstanding balance of $142,000. NYCB acquired the property at foreclosure with a $45,900 credit bid.

The original homeowner also defaulted on the periodic assessments due Shadow Wood ($168.71 per month) for her share of the condominium community's budgeted common expenses. Her defaults led Shadow Wood, in 2008 and 2009, to file a notice of delinquent assessment lien, two notices of default and election to sell, and a notice of sale against her and the property. When NYCB foreclosed, it did not pay off any part of the original homeowner's delinquent assessment lien. As to first deeds of trust like NYCB's, the HOA lien statute, NRS 116.3116 (2013), splits the HOA lien into two pieces: a superpriority piece, which survives foreclosure of the first deed of trust; and a subpriority piece, which does not. *See SFR Invs. Pool 1 v. U.S. Bank, N.A.*, 130 Nev., Adv. Op. 75, 334 P.3d 408, 410 (2014). When NYCB acquired the property via credit bid, it thus took title subject to Shadow Wood's superpriority lien but the subpriority piece of the lien was extinguished.

NYCB not only failed to pay off the superpriority lien, it also did not pay the ongoing HOA monthly assessments as they came due. This led Shadow Wood, on July 7, 2011, to record a new notice of delinquent assessment lien. The new notice listed NYCB as the owner, stated that the lien delinquency was $8,238.87 as of June 29, 2011, and advised that, "[a]dditional monies shall accrue under this claim at the rate of the claimant's regular monthly or special assessments, plus permissible late charges, costs of collection and interest, accruing subsequent to the date of this notice." Shadow Wood's counsel, Alessi & Koenig, sent a

certified letter to NYCB with a copy of the notice of delinquent assessment. The letter advised that "the total amount due may differ from the amount shown on the enclosed lien" and that:

> Unless you, within thirty days after receipt of this notice, dispute the validity of this debt, or any portion thereof, our office will assume the debt is valid. If you notify our office in writing within the thirty-day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt and a copy of such verification will be mailed to you.

NYCB did not respond, and on October 13, 2011, Shadow Wood engaged the next step of the HOA lien foreclosure process, recording a notice of default and election to sell (the NOD). Although NYCB had not made any payments to Shadow Wood,[1] the NOD reduced the stated lien delinquency to $6,608.34 as of August 29, 2011. (Mathematics and the record suggest, but do not definitively establish, that Shadow Wood subtracted the original owner's delinquent monthly assessments to the extent they went back further than nine months before the NYCB foreclosure sale.) The NOD advised, "You have the right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses," which "will increase until your account becomes current," and warned that, if not paid, foreclosure sale will follow after 90 days.

_____

[1]At oral argument, NYCB's counsel stated that the bank "typically" would not pay HOA assessments on property acquired by credit bid at foreclosure but, rather, would wait until the bank had a purchaser to buy the property and pay off the HOA assessment lien out of escrow funds.

After receiving the NOD, NYCB sent Alessi & Koenig (the law firm who acted as Shadow Wood's collection counsel and whom the NOD designated as Shadow Wood's trustee's agent) an email on November 2, 2011, saying, "In order to pay the dues on this property we will need a detailed statement." By December 12, 2011, Alessi & Koenig had not responded to NYCB's November 2, 2011, email or its December 2, 2011, reforwarded follow-up, so NYCB emailed Shadow Wood's management company asking for "a current statement and their W9 so that we can pay the dues." NYCB's title company also sent the management company "a demand which reflects all funds owed by OUR SELLER ONLY and not those funds which might have been owed by the prior owner of the subject property." In response, Alessi & Koenig and Shadow Wood's management firm sent NYCB various, seemingly conflicting documents, which included account history ledgers for the original homeowner and NYCB that listed the monthly assessments and late charges, and summaries that broke down the fees and costs associated with the current and prior lien foreclosure processes, charges not included on the account history ledgers.

By notice of sale (NOS) dated January 18 and recorded January 27, 2012, Shadow Wood scheduled its lien foreclosure sale for February 22, 2012. By then, the stated delinquency had increased from $6,608.34 as of the NOD date to $8,539.77 as of the NOS date. As NRS 116.31162(1)(b) (2013) requires, the NOS stated:

> WARNING! A SALE OF YOUR PROPERTY IS IMMINENT! UNLESS YOU PAY THE AMOUNT SPECIFIED IN THIS NOTICE BEFORE THE SALE DATE, YOU COULD LOSE YOUR HOME, *EVEN IF THE AMOUNT IS IN DISPUTE.*

(Emphasis added.)

SUPREME COURT
OF
NEVADA

(O) 1947A

On January 31, 2012, NYCB sent Shadow Wood a $6,783.16 check, an amount less than the NOS said was required but which the bank later explained it derived from the account history ledgers. Shadow Wood rejected the check and sent NYCB breakdowns showing $9,017.39 as the current lien amount, consisting of $3,252.39 in unpaid monthly assessments from August 9, 2010, through February 29, 2012, plus fees and charges for publishing and posting of the notice of trustee's sale, recording fees, late fees, title research fees, and the like. Although the breakdowns itemize the charges and provide dates, some going back to 2009 and 2010, before NYCB foreclosed its first deed of trust, they also include parentheticals suggesting the same charges were incurred multiple times, and thus that the charges, or portions of them, were current.

Shadow Wood's lien foreclosure sale proceeded, as scheduled, on February 22, 2012. NYCB did not attend or try to halt the sale, and a third-party buyer, appellant Gogo Way, purchased the property for $11,018.39 in cash. The trustee's deed to Gogo Way recites:

> Default occurred as set forth in a Notice of Default and Election to Sell which was recorded in the office of the recorder of said county. All requirements of law regarding the mailing of copies of notices and the posting and publication of the copies of the Notice of Sale have been complied with.

After the sale, NYCB sued Shadow Wood and Gogo Way, seeking declaratory relief and to quiet title under NRS 40.010. NYCB's first amended complaint alleges that NYCB remained the owner because Shadow Wood did not conduct the sale in good faith and the sale price was commercially unreasonable. Represented jointly by Alessi & Koenig, Shadow Wood and Gogo Way counterclaimed with their own declaratory

SUPREME COURT
OF
NEVADA

(O) 1947A

6

relief and quiet title claims, in which they alleged that Shadow Wood properly foreclosed based on NYCB's failure to pay assessments and performed all statutory and contractual obligations in conducting the sale, so title vested in Gogo Way.

After discovery, both sides moved for summary judgment. At the district court's suggestion, NYCB supplemented its summary judgment motion to argue that Shadow Wood was only entitled to nine months' worth of HOA assessments, or $1,519.29 (monthly assessments of $168.71 multiplied by 9). The district court granted summary judgment for NYCB and against Shadow Wood and Gogo Way. It held that, under NRS 116.3116(2) (2013), Shadow Wood could only recover $1,519.29, and found, "based upon the papers and pleadings submitted . . . that Shadow Wood and/or its agents were attempting to profit off of the subject HOA foreclosure by including exorbitant fees and costs that could not be sued as the basis for an HOA foreclosure sale in this matter." The district court deemed Shadow Wood's rejection of NYCB's $6,783.16 check "unreasonable and oppressive" and also held that "Gogo Way Trust was not a bona fide purchaser at the subject HOA foreclosure sale." On these bases, the district court set aside Shadow Wood's sale and declared title vested in NYCB. Shadow Wood and Gogo Way appeal.

II.

A.

Summary judgment may be granted for or against a party on motion therefor "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." NRCP 56(c). That an action seeks declaratory or equitable relief does not prevent its adjudication on

summary judgment. *See* NRCP 56(a), (b) (declaratory judgment claims may be resolved on summary judgment); 10B Charles Alan Wright et al., *Federal Practice & Procedure: Civil* § 2731 (3d ed. 2014) ("if there are no triable fact issues and the court believes equitable relief is warranted, it is fully empowered to grant it on a Rule 56 motion"). This does not mean "that a court always will grant summary judgment in an action seeking equitable relief simply because there is no dispute as to the facts. If relief seems inappropriate, or the judge desires a fuller development of the circumstances of the case, the judge is free to refuse to grant the motion." *Id.* And even though equitable relief is sought, our review remains de novo. *See Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1030 (2005). Finally, "as is true under Rule 56 generally, if genuine issues of fact do exist, summary judgment must be denied in a proceeding for equitable relief." 10B Charles Alan Wright et al., *supra*, § 2731.

### B.

Nevada has adopted the 1982 Uniform Common Interest Ownership Act (UCIOA), codifying it as NRS Chapter 116. *See* 1991 Nev. Stat., ch. 245, § 100, at 570. In doing so, the Legislature also enacted unique provisions not contained in the UCIOA setting out the procedures for an HOA's nonjudicial foreclosure of delinquent assessment liens. *See* NRS 116.31162-.31168 (2013), *discussed in SFR Invs. Pool 1*, 130 Nev., Adv. Op. 75, 334 P.3d at 411-12.[2] Among these provisions are NRS

---

[2]The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this opinion to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011 and 2012, when the events giving rise to this litigation occurred.

116.31164(3)(a), which mandates that, after an HOA's nonjudicial foreclosure sale, the person who conducted the sale must "[m]ake, execute and, after payment is made, deliver to the purchaser, or his or her successor or assign, a deed without warranty which conveys to the grantee all title of the unit's owner to the unit," and its companion, NRS 116.31166, which states:

> 1. The recitals in a deed made pursuant to NRS 116.31164 of:
>
> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
>
> (b) The elapsing of the 90 days; and
>
> (c) The giving of notice of sale,
>
> are conclusive proof of the matters recited.
>
> 2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. . . .

NRS 116.31166(1)-(2) (2013).

The Gogo Way trustee's deed contains recitals that NRS 116.31166 deems "conclusive," to wit: "Default" occurred; and, "All requirements of law regarding the mailing of copies of notices and the posting and publication of the copies of the Notice of Sale have been complied with." Shadow Wood and Gogo Way maintain that, under NRS 116.31166, recitals such as these bar any post-sale challenge regardless of basis, whether it disputes the HOA's compliance with the statutory default, notice, and timing requirements or, as here, seeks to set aside the sale for equity-based reasons. If true, this interpretation would call into question this court's statement in *Long v. Towne*, that a common-interest community association's nonjudicial foreclosure sale may be set aside, just as a power-of-sale foreclosure sale may be set aside, upon a showing of

Supreme Court
OF
Nevada

(O) 1947A

9

grossly inadequate price plus "fraud, unfairness, or oppression." 98 Nev. at 13, 639 P.2d at 530 (citing *Golden v. Tomiyasu*, 79 Nev. 503, 514, 387 P.2d 989, 995 (1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (internal quotation omitted))).

As a textual matter, the deed recitals to which NRS 116.31166 accords conclusive effect do not relate to the deficiencies NYCB alleges. The "conclusive" recitals concern default, notice, and publication of the NOS, all statutory prerequisites to a valid HOA lien foreclosure sale as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166. *Cf. Bourne Valley Court Tr. v. Wells Fargo Bank, N.A.*, 80 F. Supp. 3d 1131, 1135 (D. Nev. 2015) (holding that under NRS 116.31166, when a foreclosure deed recited that there was a default, the proper notices were given, the appropriate amount of time elapsed between notice of default and sale, and the notice of sale was given, it was "'conclusive proof' that the required statutory notices were provided"). But NYCB does not dispute that it defaulted, at least as to the superpriority piece of the original homeowner's lien, or that Shadow Wood complied with the notice and publication requirements of NRS 116.31162 through NRS 116.31164. NYCB's claim is that Shadow Wood acted unfairly, oppressively, perhaps even fraudulently by overstating its lien delinquency, rejecting a valid tender of the amount due, and selling the property at foreclosure for a grossly inadequate price. And, while it is possible to read a conclusive recital statute like NRS 116.31166 as conclusively establishing a default

SUPREME COURT
OF
NEVADA

(O) 1947A

10

justifying foreclosure when, in fact, no default occurred, such a reading would be "breathtakingly broad" and "is probably legislatively unintended." 1 Grant S. Nelson, Dale A. Whitman, Ann M. Burkhart & R. Wilson Freyermuth, *Real Estate Finance Law* § 7:22 (6th ed. 2014). We decline to give the default recital such a broad and unprecedented reading, particularly since Shadow Wood and Gogo Way cite no germane authority in its support. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (this court will not consider arguments not cogently stated or supported with relevant authority).

History and basic rules of statutory interpretation confirm our view that courts retain the power to grant equitable relief from a defective foreclosure sale when appropriate despite NRS 116.31166. At common law, courts possessed inherent equitable power to consider quiet title actions, a power that required no statutory authority. *See MacDonald v. Krause*, 77 Nev. 312, 317, 362 P.2d 724, 727 (1961) ("It has always been recognized that equity has inherent original jurisdiction of bills to quiet title to property and to remove a cloud from the title."); *Robinson v. Kind*, 23 Nev. 330, 47 P. 977, 978 (1897) (recognizing the "well-settled rules that an action to quiet title is a suit in equity") (internal quotation omitted). Thus, in *Low v. Staples*, 2 Nev. 209 (1866), this court determined that, notwithstanding the then-existing statutory requirement that a quiet title plaintiff must be in possession of the property, *see* Compiled Laws State of Nev., tit. VIII, ch. 3, § 256, at 372 (1873), a plaintiff not in possession still may seek to quiet title by invoking the court's inherent equitable jurisdiction to settle title disputes. *Low*, 2 Nev. at 211-13. In so holding, the court explained:

> The plaintiff seeks a remedy which courts of equity have always granted independent of any

statute, where a proper case was made out. The relief sought is a decree to compel certain persons to execute deeds of conveyance to the plaintiff, and to remove a cloud from his title. That it requires no statutory provisions to enable a court of equity to award relief in such cases, there can be no doubt.

*Id.* at 211.

In 1912, the Legislature adopted statutes to govern quiet title actions that largely stand today. *Compare* Revised Laws of Nev., ch. 62, §§ 5514-5526 (1912), *with* NRS 40.010-.130. And in *Clay v. Scheeline Banking & Trust Co.*, the court recognized that the statute authorizing a person to bring a quiet title claim against another who claims adversely, now numbered NRS 40.010, essentially codified the court's existing equity jurisprudence, stating that "there is practically no difference in the nature of the action under our statute and as it exists independent of statute." 40 Nev. 9, 16-17, 159 P. 1081, 1082 (1916). So, a person who brings a quiet title action may, consistent with NRS Chapter 40 and our long-standing equitable jurisprudence, invoke the court's inherent equitable powers to resolve the competing claims to such title.

The Legislature borrowed NRS 116.31166's conclusive recital language from NRS 107.030(8), which it enacted in 1927 to govern power-of-sale foreclosures. A.B. 131, 33d Leg. (Nev. 1927); 1927 Nev. Stat., ch. 173, § 2, at 295; Hearing on A.B. 221 Before the Senate Judiciary Comm., 66th Leg. (Nev., May 23, 1991) & Exhibit C (conversion table matching up each component of the Nevada bill with its UCIOA counterpart providing that the section that became NRS 116.31166 had no UCIOA equivalent, but was explained as: "Deed recitals in assessment lien foreclosure sale. *See* NRS 107.030(8)."). The conclusive recital provisions in NRS 107.030(8) have never been argued to carry the preemptive effect that

Shadow Wood and Gogo Way attribute to NRS 116.31166. While not directly addressing the preemption argument Shadow Wood and Gogo Way make as to NRS 116.31166, our post-NRS 107.030(8) cases reaffirm that courts retain the power, in an appropriate case, to set aside a defective foreclosure sale on equitable grounds. *See Golden v. Tomiyasu,* 79 Nev. at 514, 387 P.2d at 995 (adopting the California rule that "inadequacy of price, however gross, is not in itself a sufficient ground for setting aside a trustee's sale legally made; there must be in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (quoting *Oller v. Sonoma Cty. Land Title Co.,* 290 P.2d 880, 882 (Cal. Ct. App. 1955))); *McLaughlin v. Mut. Bldg. & Loan Ass'n,* 57 Nev. 181, 191, 60 P.2d 272, 276 (1936) (noting that, in the context of an action to recover possession of a property after a trustee sale, "[h]ad the conduct of the trustee and respondent, in connection with the sale, been accompanied by any actual fraud, deceit, or trickery, a more serious question would be presented"); *see also Nev. Land & Mortg. Co. v. Hidden Wells Ranch, Inc.,* 83 Nev. 501, 504, 435 P.2d 198, 200 (1967) ("In the proper case, the trial court may set aside a trustee's sale upon the grounds of fraud or unfairness."). And, cases elsewhere to have addressed comparable conclusive- or presumptive-effect recital statutes confirm that such recitals do not defeat equitable relief in a proper case; rather, such recitals are "conclusive, *in the absence of grounds for equitable relief.*" *Holland v. Pendleton Mortg. Co.,* 143 P.2d 493, 496 (Cal. Ct. App. 1943) (emphasis added); *see Bechtel v. Wilson,* 63 P.2d 1170, 1172 (Cal. Ct. App. 1936) (distinguishing between a challenge to the sufficiency of pre-sale notice, which was precluded by the conclusive recitals in the deed, and an equity-based challenge based upon the alleged

unfairness of the sale); *compare* 1 Grant S. Nelson, *Real Estate Finance Law, supra,* § 7:23, at 986-87 ("After a defective power of sale foreclosure has been consummated, mortgagors and junior lienholders in virtually every state have an equitable action to set aside the sale.") (footnotes omitted), *with id.* § 7:22, at 980-82 (noting that "[m]any states have attempted to enhance the stability of power of sale foreclosure titles by enacting a variety of *presumptive statutes*"), *and* 6 Baxter Dunaway, *Law of Distressed Real Estate,* § 64:161 (2015) (noting that a trustee's deed recital can be overcome on a showing of actual fraud).

The Legislature is "presumed not to intend to overturn long-established principles of law" when enacting a statute. *Hardy Cos., Inc. v. SNMARK, LLC,* 126 Nev. 528, 537, 245 P.3d 1149, 1155-56 (2010) (internal quotation omitted). Also, this court strictly construes statutes in derogation of the common law, *Holliday v. McMullen,* 104 Nev. 294, 296, 756 P.2d 1179, 1180 (1988), and has been instructed to apply "principles of law and equity, including . . . the law of real property," to NRS Chapter 116. NRS 116.1108. The long-standing and broad inherent power of a court to sit in equity and quiet title, including setting aside a foreclosure sale if the circumstances support such action, the fact that the recitals made conclusive by operation of NRS 116.31166 implicate compliance only with the statutory prerequisites to foreclosure, and the foreign precedent cited under which equitable relief may still be available in the face of conclusive recitals, at least in cases involving fraud, lead us to the conclusion that the Legislature, through NRS 116.31166's enactment, did not eliminate the equitable authority of the courts to consider quiet title actions when an HOA's foreclosure deed contains conclusive recitals. We therefore reject Shadow Wood's and Gogo Way's contention that NRS

116.31166 defeats, as a matter of law, NYCB's action to set aside the trustee's deed and to quiet title in itself.

## C.

The question remains whether NYCB demonstrated sufficient grounds to justify the district court in setting aside Shadow Wood's foreclosure sale on NYCB's motion for summary judgment. *Breliant v. Preferred Equities Corp.*, 112 Nev. 663, 669, 918 P.2d 314, 318 (1996) (stating the burden of proof rests with the party seeking to quiet title in its favor). As discussed above, demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression. *Long*, 98 Nev. at 13, 639 P.2d at 530.

NYCB failed to establish that the foreclosure sale price was grossly inadequate as a matter of law. NYCB compares Gogo Way's purchase price, $11,018.39, to the amount NYCB bought the property for at its foreclosure sale, $45,900.00. Even using NYCB's purchase price as a comparator, and adding to that sum the $1,519.29 NYCB admits remained due on the superpriority lien following NYCB's foreclosure sale, Gogo Way's purchase price reflects 23 percent of that amount and is therefore not obviously inadequate. *See Golden*, 79 Nev. at 511, 387 P.2d at 993 (noting that even where a property was "sold for a smaller proportion of its value than 28.5%," it did not justify setting aside the sale); *see also* Restatement (Third) of Prop.: Mortgages § 8.3 cmt. b (1997) (stating that while "[g]ross inadequacy cannot be precisely defined in terms of a specific percentage of fair market value[, g]enerally . . . a court is warranted in invalidating a sale where the price is less than 20 percent of fair market

SUPREME COURT
OF
NEVADA

(O) 1947A

value and, absent other foreclosure defects, is usually not warranted in invalidating a sale that yields in excess of that amount").[3]

Other than the sale price, NYCB focuses on the actions of Shadow Wood and its counsel, Alessi & Koenig, which NYCB submits amounted to fraud, unfairness, or oppression that, combined with the inadequate price, justify setting aside the sale. NYCB focuses on Shadow Wood's alleged overstatement of its lien amount. The district held that Shadow Wood was limited to the superpriority lien that survived its first deed of trust foreclosure sale, which NYCB asserts was capped at $1,519.29, or nine months of $168.71 monthly assessments. NYCB persuaded the district court to find, as a matter of law, that Shadow Wood's actions in trying to collect more than $1,519.29 from NYCB were "unreasonable and oppressive" and justified the district court in setting aside the sale.

NYCB's argument does not account for the fact that, after foreclosing its first deed of trust, NYCB became the owner of the property. Its foreclosure sale extinguished Shadow Wood's subpriority lien, eliminating the original owner's monthly assessment arrearages going back further than the nine months accorded superpriority status by NRS 116.3116(2) (2013). But NYCB's foreclosure did not absolve NYCB of its

---

[3]Although not argued by NYCB, the record includes an unauthenticated appraisal of the property setting its value at $53,000. The $11,018.39 sale price is slightly more than 20 percent of that estimate, so it does not affect the analysis in the text. *See also* Restatement (Third) of Prop.: Mortgages § 8.3 cmt. b (stating that "courts can properly take into account the fact that the value shown on a recent appraisal is not necessarily the same as the property's fair market value on the foreclosure sale date").

obligation, as the new owner, to pay the monthly HOA assessments as they came due, which it failed to do. The lien delinquency breakdowns that Shadow Wood sent NYCB charged NYCB with monthly assessments from August 9, 2010, through February 29, 2012. NYCB foreclosed its deed of trust on May 9, 2011, so Shadow Wood went back nine months, to August 9, 2010, to calculate NYCB's superpriority monthly assessment delinquency of $1,519.29. To this sum, though, Shadow Wood properly added the monthly assessments NYCB owed as owner on an ongoing basis, from June 9, 2011, projected through February 2012, when the Shadow Wood foreclosure sale occurred, which effectively doubles the monthly assessment delinquency. In holding that Shadow Wood acted unfairly and oppressively in seeking to collect more than $1,519.29, the district court erred, since it excluded the ongoing monthly assessments due from NYCB as owner.[4]

NYCB's analysis also does not adequately defend its complete exclusion of all fees and costs associated with Shadow Wood's foreclosure of its lien, even fees and costs incurred after NYCB became the owner of the property. The omission is understandable, given the district court's holding that Shadow Wood was limited as a matter of law to $1,519.29. The question of whether and, if so, to what extent costs and fees are recoverable in the context of an HOA superpriority lien is open, particularly as to foreclosures that pre-date the 2015 amendments to NRS

---

[4]The Shadow Wood breakdown sets out $3,252.39 as the monthly assessment delinquency from August 9, 2010, through February 29, 2012. The record does not explain the math that produced this number. Nineteen months of assessments, assuming the split month is included, works out to $3,205.49.

Chapter 116. But here, because the parties did not develop in district court what the fees and costs represent, when they were incurred, their (un)reasonableness, and the impact, if any, of Shadow Wood's covenants, conditions and restrictions (CC&Rs) on their allowance,[5] we leave this issue to further development in the district court on remand.

The district court erred in simply stopping at its conclusion that Shadow Wood was entitled only to nine months' worth of assessments. None of the parties, most importantly NYCB, whom the district court found carried its burden to show no genuine issues of material fact existed and that it therefore was entitled to judgment as a matter of law, point to uncontroverted evidence in the record to show exactly what Shadow Wood was entitled to post-NYCB's foreclosure sale and up until the association foreclosure sale, leaving that amount surrounded by issues of fact and not a proper basis upon which to enter summary judgment. *Anderson v. Heart Fed. Sav. & Loan Ass'n*, 256 Cal. Rptr. 180, 189 (Ct. App. 1989) (reversing grant of summary judgment where there remained triable issues of fact as to the amount actually owed to the trustee and thus as to whether the tender was sufficient).

As further evidence of the oppression and unfairness, NYCB points to the inconsistent lien amounts provided by Shadow Wood,

---

[5]The record on appeal does not include the complete CC&Rs. Allegedly, section 4.01 of the CC&Rs reads as follows:

> The annual and special assessments, together with interest, costs and reasonable attorney's fees, shall be a charge on the Condominium Unit and shall be a continuing lien upon the Condominium Unit against which such assessment is made.

SUPREME COURT
OF
NEVADA

(O) 1947A

through Alessi & Koenig, from the time it filed the 2011 notice of delinquent assessment to the time it actually sold the property to Gogo Way.[6] The recorded instruments and communications between the parties indeed demonstrate that Shadow Wood and its counsel provided varying lien amounts to NYCB throughout the foreclosure process, conduct that, if it rose to the level of misrepresentations and nondisclosures that indeed prevented NYCB's ability to cure the default, might support setting aside the sale. *Cf. In re Tome*, 113 B.R. 626, 636 (Bankr. C.D. Cal. 1990) (holding that where the security interest holder had not notified the borrower that it had purchased the interest, it was bound by the previous holder's provision of inaccurate information to the borrower concerning the amount due to halt the foreclosure sale and that such inaccurate information supported setting aside the sale).

Against these inconsistencies, however, must be weighed NYCB's (in)actions. The NOS was recorded on January 27, 2012, and the sale did not occur until February 22, 2012. NYCB knew the sale had been scheduled and that it disputed the lien amount, yet it did not attend the sale, request arbitration to determine the amount owed, or seek to enjoin the sale pending judicial determination of the amount owed. The NOS included a warning as required by NRS 116.311635(3)(b):

> WARNING! A SALE OF YOUR PROPERTY IS IMMINENT! UNLESS YOU PAY THE AMOUNT SPECIFIED IN THIS NOTICE BEFORE THE SALE DATE, YOU COULD LOSE YOUR HOME,

---

[6]NYCB does not argue that it invoked NRS 116.3116(8) (2013), so our analysis does not take this statute into consideration.

*EVEN IF THE AMOUNT IS IN DISPUTE.* YOU MUST ACT BEFORE THE SALE DATE.

(Emphasis added.) In addition to the required warning, Shadow Wood's NOS listed the lien amount as $8,539.77. For whatever reason, NYCB tendered only $6,783.16.

Taken together, the record demonstrates too many unresolved issues of material fact for the district court to assess the competing equities in this case as between Shadow Wood and NYCB on the summary judgment record assembled.

## D.

There also remain issues surrounding Gogo Way's putative status as a bona fide purchaser and its bearing on the equitable relief requested. NYCB argues that Gogo Way waived its presently made bona fide purchaser argument because it relied below on NRS Chapter 645F's bona fide purchaser provisions, rather than the common-law-based argument it makes on appeal. *See Schuck v. Signature Flight Support of Nev., Inc.*, 126 Nev. 434, 436, 245 P.3d 542, 544 (2010) (stating points not urged in the trial court generally are deemed waived on appeal).

When sitting in equity, however, courts must consider the entirety of the circumstances that bear upon the equities. *See, e.g., In re Petition of Nelson*, 495 N.W.2d 200, 203 (Minn. 1993) (considering whether the totality of the circumstances supported granting equitable relief to set aside a sale when the former owner had failed to act during the redemption period); *see also La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 880 (9th Cir. 2014) (remanding for reconsideration of a district court's decision granting a permanent injunction because the district court's analysis did not discuss a fact relevant to the weighing of the equities); *Murray v. Cadle Co.*, 257 S.W.3d 291, 301 (Tex. App. 2008)

Supreme Court
OF
Nevada

(O) 1947A

20

(considering the totality of the circumstances to determine whether to uphold the lower court's equitable subrogation decision); *Savage v. Walker*, 969 A.2d 121, 125 (Vt. 2009) (noting trial courts should consider the totality of the circumstances to determine if a constructive trust, an equitable remedy, was warranted). This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief.[7] *Smith v. United States*, 373 F.2d 419, 424 (4th Cir. 1966) ("Equitable relief will not be granted to the possible detriment of innocent third parties."); *see also In re Vlasek*, 325 F.3d 955, 963 (7th Cir. 2003) ("[I]t is an age-old principle that in formulating equitable relief a court must consider the effects of the relief on innocent third parties."); *Riganti v. McElhinney*, 56 Cal. Rptr. 195, 199 (Ct. App. 1967) ("[E]quitable relief should not be granted where it would work a gross injustice upon innocent third parties.").

Here, Gogo Way was a party before the district court in this quiet title action, claiming a right to the property as the foreclosure purchaser to whom the deed had been delivered. So, its status as a potentially innocent third party that would be harmed by setting aside the

---

[7]Consideration of harm to potentially innocent third parties is especially pertinent here where NYCB did not use the legal remedies available to it to prevent the property from being sold to a third party, such as by seeking a temporary restraining order and preliminary injunction and filing a lis pendens on the property. *See* NRS 14.010; NRS 40.060. *Cf. Barkley's Appeal. Bentley's Estate*, 2 Monag. 274, 277 (Pa. 1888) ("In the case before us, we can see no way of giving the petitioner the equitable relief she asks without doing great injustice to other innocent parties who would not have been in a position to be injured by such a decree as she asks if she had applied for relief at an earlier day.").

SUPREME COURT
OF
NEVADA

(O) 1947A

21

foreclosure sale and placing title back with NYCB was in issue. In fact, the district court's determination that Gogo Way was not a bona fide purchaser allowed it to set aside the sale and quiet title in NYCB's favor without taking into account the harm that would cause Gogo Way, as the order reflects no further discussion of Gogo Way beyond that summary determination. Therefore, we find the issue of whether Gogo Way was an innocent purchaser who took the property without any knowledge of the pre-sale dispute between NYCB and Shadow Wood was sufficiently in controversy before the district court, and indeed formed the basis of a major aspect of the district court's decision, such that the issue was not waived.

A subsequent purchaser is bona fide under common-law principles if it takes the property "for a valuable consideration and without notice of the prior equity, and without notice of facts which upon diligent inquiry would be indicated and from which notice would be imputed to him, if he failed to make such inquiry." *Bailey v. Butner*, 64 Nev. 1, 19, 176 P.2d 226, 234 (1947) (emphasis omitted); *see also Moore v. De Bernardi*, 47 Nev. 33, 54, 220 P. 544, 547 (1923) ("The decisions are uniform that the bona fide purchaser of a legal title is not affected by any latent equity founded either on a trust, [e]ncumbrance, or otherwise, of which he has no notice, actual or constructive."). Although, as mentioned, NYCB might believe that Gogo Way purchased the property for an amount lower than the property's actual worth, that Gogo Way paid "valuable consideration" cannot be contested. *Fair v. Howard*, 6 Nev. 304, 308 (1871) ("The question is not whether the consideration is adequate, but whether it is valuable."); *see also Poole v. Watts*, 139 Wash. App. 1018 (2007) (unpublished disposition) (stating that the fact that the foreclosure

sale purchaser purchased the property for a "low price" did not in itself put the purchaser on notice that anything was amiss with the sale).

As to notice, NYCB submits that "the simple fact that the HOA trustee is attempting to sell the property, and divest the title owner of its interest, is enough to impart constructive notice onto the purchaser that there may be an adverse claim to title." Essentially, then, NYCB would have this court hold that a purchaser at a foreclosure sale can never be bona fide because there is always the possibility that the former owner will challenge the sale post hoc. The law does not support this contention.

When a trustee forecloses on and sells a property pursuant to a power of sale granted in a deed of trust, it terminates the owner's legal interest in the property. *Charmicor, Inc. v. Bradshaw Fin. Co.*, 92 Nev. 310, 313, 550 P.2d 413, 415 (1976). This principle equally applies in the HOA foreclosure context because NRS Chapter 116 grants associations the authority to foreclose on their liens by selling the property and thus divest the owner of title. *See* NRS 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules); NRS 116.31164(3)(a) (stating the association's foreclosure sale deed "conveys to the grantee all title of the unit's owner to the unit"). And if the association forecloses on its superpriority lien portion, the sale also would extinguish other subordinate interests in the property. *SFR Invs.*, 334 P.3d at 412-13. So, when an association's foreclosure sale complies with the statutory foreclosure rules, as evidenced by the recorded notices, such as is the case here, and without any facts to indicate the contrary, the purchaser would have only "notice" that the former owner had the ability to raise an equitably based post-sale challenge, the basis of which is unknown to that purchaser.

That NYCB retained the ability to bring an equitable claim to challenge Shadow Wood's foreclosure sale is not enough in itself to demonstrate that Gogo Way took the property with notice of any potential future dispute as to title. And NYCB points to no other evidence indicating that Gogo Way had notice before it purchased the property, either actual, constructive, or inquiry, as to NYCB's attempts to pay the lien and prevent the sale, or that Gogo Way knew or should have known that Shadow Wood claimed more in its lien than it actually was owed, especially where the record prevents us from determining whether that is true. *Lennartz v. Quilty*, 60 N.E. 913, 914 (Ill. 1901) (finding a purchaser for value protected under the common law who took the property without record or other notice of an infirmity with the discharge of a previous lien on the property). Because the evidence does not show Gogo Way had any notice of the pre-sale dispute between NYCB and Shadow Wood, the potential harm to Gogo Way must be taken into account and further defeats NYCB's entitlement to judgment as a matter of law.

III.

"Where the complaining party has access to all the facts surrounding the questioned transaction and merely makes a mistake as to the legal consequences of his act, equity should normally not interfere, especially where the rights of third parties might be prejudiced thereby." *Nussbaumer v. Superior Court in & for Yuma Cty.*, 489 P.2d 843, 846 (Ariz. 1971). NYCB did not tender the amount provided in the notice of sale, as statute and the notice itself instructed, and did not meet its burden to show that no genuine issues of material fact existed regarding the proper amount of Shadow Wood's lien or Gogo Way's bona fide status. Though perhaps NYCB could prove its claim at trial by presenting sufficient evidence to demonstrate that the equities swayed so far in its

favor as to support setting aside Shadow Wood's foreclosure sale, NYCB did not prove that it was entitled to summary judgment on the matter. *Chapman v. Deutsche Bank Nat'l Tr. Co.*, 129 Nev., Adv. Op. 34, 302 P.3d 1103, 1106 (2013).

We therefore vacate the district court's judgment and remand.

_____, J.
Pickering

We concur:

_____ C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

_____, J.
Gibbons

SUPREME COURT
OF
NEVADA

(O) 1947A